SIXTH DIVISION

January 14, 2000

No. 1-98-0376

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

ADOLPHO LEON,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Edward Fiala,

Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

A jury found defendant, Adolpho Leon, guilty of one count of possession of a controlled substance, one count of possession of a controlled substance with intent to deliver, and one count of possession of cannabis with intent to deliver.  The trial court sentenced defendant to 15 years in prison.  Defendant appeals, contending:  (1) the trial court erred by denying his motion to suppress; and (2) his posttrial counsel provided ineffective assistance.  We affirm.

At the hearing on the motion to suppress, Officer Manuel Godinez testified that on the morning of July 27, 1994, he and six or seven other police officers went to defendant's first-floor apartment to execute a search warrant.  Officer Godinez knocked on the apartment door.  A person inside the apartment responded, "Who is it?"  Officer Godinez announced his office and told the person inside to open the door.  The officers received no response, so they forced open the door and entered the apartment.

Officer Godinez testified that, upon entering the apartment, he saw defendant standing in a 

hallway and shortly thereafter he saw a young child seated on a sofa in the living room.  Officer Godinez explained to defendant that they were executing a search warrant, and the officer asked defendant whether he had any narcotics or weapons in the apartment.  Defendant then led Officer Godinez to the bathroom, where the officer recovered a quantity of cocaine.  Officer Godinez next asked defendant, "Where is the gun at?"  Defendant responded, "It's in the bedroom."  Officer Godinez walked to the bedroom, where he saw defendant's wife, Marisol.   Marisol was subsequently "taken" into the living room and seated with her child on the couch.  Officer Godinez searched the bedroom closet and found a loaded, semi-automatic pistol.  Officer Godinez placed defendant under arrest and read him his 
Miranda
 rights.

Officer Godinez testified that he searched defendant and discovered a set of keys in defendant's pants pocket.  The smallest key was about half the size of the other keys and appeared to be for some sort of locked container.  Officer Godinez was unable to find anything in the apartment that the key fit, so he approached Marisol in the living room, "fanned" the key ring, and asked her what the small key was for.  Marisol responded that the key fit their storage locker downstairs.  Marisol further told the officer that the storage locker contained clothes and she gave him permission to "go look" in the storage locker.   Officer Godinez testified that he went downstairs to the basement, where he saw a row of storage lockers.  Officer Godinez eventually used the key to open locker number 10.  Inside the locker was a yellow pail containing six brown, taped packages that Officer Godinez believed to be kilograms of cocaine.  Officer Godinez also recovered four large plastic bags from the locker, all containing a "crushed green plant."

During Officer Godinez's testimony, the State showed him some photographs of the storage lockers taken by a fellow police officer about 10 minutes after the narcotics were recovered.  In those photographs, the storage lockers appear undamaged.  Officer Godinez testified that the photographs accurately depicted the condition of the storage lockers on July 27, 1994.  Officer Godinez was also shown defense photographs of the storage lockers.  In those photographs, the hinges on some of the lockers, including locker number 10, appeared to be damaged.  Officer Godinez testified that those defense photographs did not accurately reflect the condition of the storage lockers on July 27, 1994.

Marisol Leon testified that at approximately 9 a.m. on July 27, 1994, she and her husband were awakened by the sound of a loud "bang" on the front door of their apartment.  Defendant got up from bed and walked to the doorway of their bedroom.  Suddenly, four or five police officers entered their bedroom, pushed defendant against a wall, and pointed guns at his head.  The officers then took defendant out of the room.  

Marisol testified that, a few moments later, she joined defendant and their son in the living room.  While Marisol was sitting in the living room, she heard the officers searching their bedroom.  After the police left, Marisol went downstairs and saw that the storage lockers there had been damaged.  Marisol testified that at no time did a police officer show her a key or ask her if they could search the basement or storage locker.

At the end of the testimony on the motion to suppress, the trial court denied the motion, ruling that Marisol had voluntarily consented to the search of the storage locker. 

At trial, Officer Godinez reiterated his testimony at the suppression hearing concerning his discovery of narcotics in defendant's apartment and in the storage locker.  Officer Godinez also testified that after recovering the narcotics and cannabis from the storage locker, he returned upstairs.   As the officer approached his sergeant, defendant told him, "She didn't even know that was down there."

Defendant testified at trial that at approximately 10 a.m. on July 27, 1994, he was in bed with his wife when he heard a loud noise.  Defendant got out of bed and encountered police officers, who grabbed him and sat him in the living room.  Shortly thereafter, his wife was brought into the living room with him.

Defendant testified that he remained in the living room the entire two-hour time period that the officers searched the apartment; he denied leading any police officer to find evidence.  Several times during the search, Officer Godinez came into the living room and showed him things including money from the kitchen cabinet and cocaine he had found in the bathroom.  

Defendant testified that Officer Godinez also showed him a yellow bucket.  Defendant told the officer that he didn't know to whom it belonged.  Defendant denied having any narcotics or contraband in his storage locker.

Richard Stopka, defendant's original defense attorney, testified that on July 27, 1994, he was asked to represent defendant.  Stopka went to defendant's apartment building and inspected his first-

floor apartment and the basement storage area.  Stopka testified that several of the storage lockers appeared to have been broken into.

Both parties stipulated that the contraband recovered from defendant's apartment contained .55 grams of cocaine.  The contraband recovered from the storage locker contained 1,425.9 grams of cannabis and 6,032.6 grams of cocaine.

The jury found defendant guilty of one count of possession of a controlled substance, one count of possession of a controlled substance with intent to deliver, and one count of possession of cannabis with intent to deliver.  The trial court sentenced defendant to 15 years in prison.  Defendant filed this timely appeal following the denial of his posttrial motion.

First, defendant argues the trial court erred in denying his motion to suppress because Officer Godinez failed to tell Marisol that she was under no obligation to answer his question about the key he had found in defendant's pocket.  In support, defendant notes that Officer Godinez first searched the apartment and determined that the key did not fit any lock therein.  Therefore, defendant contends that by the time Officer Godinez questioned Marisol about the key, the search of the apartment was completed and the officer's questioning of Marisol represented an intent to extend his search beyond the apartment, that is, beyond the scope of the search warrant.  Defendant argues that in order to so extend the scope of the search, Officer Godinez was required to inform Marisol that the initial search was completed and that she was under no obligation to answer his question about the key or otherwise
 consent to another search.

Defendant cites no Illinois case law which supports his argument.  However, defendant does cite a case that was  pending in the Illinois Supreme Court at the time he filed his brief in this court, 
People v. Brownlee, No. 84739
.  Defendant anticipated that 
Brownlee
 would hold that the Illinois Constitution requires police officers to provide notification of the termination of the initial police action before seeking consent for a further search.  Defendant argued that should the supreme court so hold, then Officer Godinez's failure to inform Marisol about the termination of his initial search necessitates that the drugs seized as a result of Marisol's uninformed consent must be suppressed.   

On June 17, 1999, the supreme court issued its opinion in 
Brownlee
.  See 
People v. Brownlee
, 186 Ill. 2d 501 (1999).  The supreme court did not address whether the Illinois Constitution requires notification of the termination of an initial police action before seeking consent for a further search.  Accordingly, defendant's argument necessarily fails, as it is premised solely on an anticipated holding in 
Brownlee
 that never materialized and defendant cites no other additional Illinois authority.

Next, defendant argues that the trial court erred in denying his motion to suppress because Officer Godinez's questioning of Marisol constituted a "search [of her] mind for evidence of a crime without probable cause [and] without reasonable suspicion" and thus constituted an unreasonable search and seizure under the United States Constitution and Illinois Constitution.   Since neither the facts nor the credibility of the witnesses is questioned, the issue of the constitutional reasonableness of the search is a legal one, which we consider 
de
 
novo
.  
People v. Foskey
, 136 Ill. 2d 66, 76 (1990).

First, we address defendant's argument under the United States Constitution.  In support of his argument, defendant cites 
Arizona v. Hicks
, 480 U.S. 321, 94 L. Ed. 2d 347, 107 S. Ct. 1149 (1987) . In 
Hicks
, the police entered defendant's apartment to investigate a shooting. 
Hicks
, 480 U.S. at 323, 94 L. Ed. 2d at 353, 107 S. Ct. at 1152.  One of the officers noted expensive stereo equipment that seemed out of place in the "squalid" apartment.  
Hicks
, 480 U.S. at 323, 94 L. Ed. 2d at 353, 107 S. Ct. at 1152.  The officer moved the stereo equipment in order to record the serial numbers for further investigation.  
Hicks
, 480 U.S. at 323, 94 L. Ed. 2d at 353, 107 S. Ct.  at 1152.  That investigation revealed that some of the serial numbers matched those on stereo equipment taken in an armed robbery.  
Hicks
, 480 U.S. at 323, 94 L. Ed. 353, 107 S. Ct.  at 1152.  Officers then obtained a warrant to reenter defendant's apartment and seize the stolen property.  
Hicks
, 480 U.S. at 323-24, 94 L. Ed. 2d at 353, 107 S. Ct. at 1152.  Defendant was subsequently indicted for the robbery.  
Hicks
, 480 U.S. at 324, 94 L. Ed. 2d at 353, 107 S. Ct. at 1152.

The trial court granted defendant's motion to suppress the evidence that had been seized.   
Hicks
, 480 U.S. at 324, 94 L. Ed. 2d at 353, 107 S. Ct. at 1152.  On appeal, the United States Supreme Court held that the act of moving the stereo equipment constituted a search unrelated to the search for the shooter, victims, and weapons that was the lawful objective of the entry into the apartment.  
Hicks
, 480 U.S. at 324-25, 94 L. Ed. 2d at 353-54, 107 S. Ct. at 1152.  The court further held that defendant's fourth amendment rights were violated because no probable cause or exigent circumstances existed to justify the search.  
Hicks
, 480 U.S. at 325-29, 94 L. Ed. 2d at 354-57, 107 S. Ct. at 1153-55.

In the present case, defendant contends that since the officers had completed their search of the apartment prior to questioning Marisol about the key, the State was required, pursuant to 
Hicks
, to show probable cause to search for criminality connected to the key.  

We reject defendant's arguments that the State was required to show that the officer had probable cause or an individualized suspicion prior to questioning Marisol about the key.  In 
United States v. Mendenhall
, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980), Justice Stewart stated in a section of the opinion which was joined by Justice Rehnquist:

"We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained.  Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards.  The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' [Citation.]  As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

***

We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  
Mendenhall
, 446 U.S. at 553-54, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877 (opinion of Stewart, J., joined by Rehnquist, J.).

Illinois courts have adopted the 
Mendenhall
 analysis.  See 
People v. Murray
, 137 Ill. 2d 382, 388-

90 (1990).   Applying 
Mendenhall
 to the present case, we find, for the reasons that follow, that Officer Godinez's questioning of Marisol was not a seizure under the fourth amendment and thus did not require any particular or objective justification.

Factors to consider when determining whether a person was seized are:  the threatening presence of several police officers; the display of weapons by an officer; physical touching; tone of voice indicating compliance with arrest might be compelled; and formal declaration of arrest or routine practices associated with arrest such as searching, booking, handcuffing, fingerprinting and photographing.  See 
Mendenhall
, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877; 
People v. Myrick
, 274 Ill. App. 3d 983, 988 (1995).  The test does not focus on any one action taken by the police but instead focuses on the totality of the circumstances that led to a coercive effect by the police.  
Myrick
, 274 Ill. App. 3d at 988.

Applying the foregoing factors to the case at bar, we note that although there were multiple officers searching the apartment, Officer Godinez was the only officer in the living room with Marisol at the time he questioned her.  Officer Godinez did not display any weapons when talking with Marisol, nor did he touch her or make any formal declaration of arrest or routine practices associated with arrest.  There was no testimony that his tone of voice when questioning her indicated compliance with arrest might be compelled.  

During oral argument on this case, there was discussion about the officers' mode of entry into the apartment, 
i.e.
, their use of a sledgehammer to force open the door.  Forced entry into a dwelling is a factor to consider when determining whether a seizure has occurred.  However, it is not dispositive, especially where, as here, the officer clearly announces that his purpose in entering the apartment is pursuant to a search warrant (as opposed to an arrest warrant), and where other indicia of a seizure, such as the presence of weapons, touching, coercive tone of voice, or routine practices associated with arrest are missing. 

Accordingly, the totality of the circumstances indicates that Officer Godinez's questioning of Marisol did not constitute a seizure; therefore, no particular or objective justifications were required under the fourth amendment prior to talking with her.  

Next, we address defendant's argument that Officer Godinez's questioning of Marisol was a violation of article I, section 6, of the Illinois Constitution (hereinafter referred to as section 6). Section 6 provides:

"The people shall have the right to be secure in their persons, houses, papers, and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means."  Ill. Const. 1970, art. I, §6.

Defendant contends Officer Godinez's questioning of Marisol violated section 6's privacy clause.  In support, he cites 
In re May 1991 Will County Grand Jury
, 152 Ill. 2d 381 (1992).  In 
In re May 1991 Will County Grand Jury
, the issue before the supreme court was whether a grand jury could subpoena defendants to appear in a lineup and submit to fingerprinting and the taking of hair samples.  
Will County
, 152 Ill. 2d at 385-86.  The court held that section 6 recognizes a "zone of personal privacy" that is stated broadly and without restrictions.  
Will County
, 152 Ill. 2d at 391.  The court held that once a right to privacy is established, the court must determine whether a search and seizure is reasonable.  
Will County
, 152 Ill. 2d at 392.  In establishing the reasonableness of a grand jury subpoena for physical evidence of a nonintrusive nature, the State must establish relevance and make a showing of "individualized suspicion."  
Will County
, 152 Ill. 2d at 393.

In the present case, defendant argues that section 6 provides  a broad "zone of privacy" surrounding Marisol's thoughts concerning the key.  Defendant contends that section 6 provides more expansive protections than its fourth amendment counterpart and, therefore, as in 
In re May 1991 Will County Grand Jury
, the State was required to make a showing of relevance and individualized suspicion in order to justify the officer's questioning of her. 

We disagree.   In 
People v. Mitchell
, 165 Ill. 2d 211 (1995), defendant filed a motion to quash and suppress, arguing that the officer's seizure of cocaine from his person went beyond the scope of a 
Terry
 patdown.  
Mitchell
, 165 Ill. 2d at 214.  On appeal to the supreme court, defendant argued that the officer's touching of his body fell within the personal privacy clause of section 6.  
Mitchell
, 165 Ill. 2d at 219.  Relying on 
Will County
, defendant asserted that section 6 goes beyond federal constitutional guarantees with respect to the right of privacy.  
Mitchell
, 165 Ill. 2d at 219. 

 Our supreme court held that an officer's conduct of a 
Terry
 stop had traditionally been tested against the bounds of section 6's search and seizure clause.  
Mitchell
, 165 Ill. 2d at 220.  Thus, the court held that, although the officer's conduct triggered right to privacy concerns generally, such conduct was more particularly a search and seizure issue.  
Mitchell
, 165 Ill. 2d at 220.  The court further held that there was "nothing *** to support a divergence in [the] interpretation of our section 6 search and seizure clause from the federal fourth amendment interpretation."  
Mitchell
, 165 Ill. 2d at 219.

Similar to 
Mitchell
, Officer Godinez's questioning of Marisol falls within the traditional bounds of section 6's search and seizure clause as opposed to the right of privacy clause (see, 
e.g.
, 
People v. Lenius
, 293 Ill. App. 3d 519 (1997); 
People v. Carter
, 288 Ill. App. 3d 658 (1997)) and therefore we look to the United States Supreme Court's fourth amendment jurisprudence in determining the constitutionality of Officer Godinez's conduct.  Accordingly, pursuant to the Supreme Court's 
Mendenhall
 analysis cited above, we hold that Officer Godinez's questioning of Marisol was not a seizure under section 6 such that particular or objective justifications were required prior to speaking with her.

Next, defendant argues that, taking as true Officer Godinez's testimony that Marisol consented to the search of the storage locker, such consent was not voluntarily given.  Therefore, defendant contends the trial court erred in denying his motion to suppress.   

The State bears the burden of showing by a preponderance of the evidence that a consent to search was voluntarily given.  
People v. Hernandez
, 278 Ill. App. 3d 545, 551 (1996).  The determination of whether a consent is voluntary is a question of fact to be determined from the totality of the circumstances.  
Schneckloth v. Bustamonte
, 412 U.S. 218, 227, 36 L. Ed. 2d 854, 862-63, 93 S. Ct. 2041, 2047-48 (1973); 
Hernandez
, 278 Ill. App. 3d at 551.  The reviewing court will not reverse the trial court's determination of the voluntariness of a consent unless it is clearly unreasonable.  
Hernandez
, 278 Ill. App. 3d at 551.

Defendant argues that Marisol's consent was not voluntary, citing the presence of several officers in the apartment who restricted her freedom of movement by placing her on the couch in the living room.  However, we have held that the presence of several armed, uniformed officers, in and of itself, does not give rise to such intimidation as to override a person's free will or render her incapable of giving valid consent to search.  See 
People v. Spriegel
, 233 Ill. App. 3d 490 (1992); 
People v. Denwiddie
, 50 Ill. App. 3d 184 (1977).

Defendant argues that Officer Godinez never told Marisol that defendant had withheld his consent to search the storage locker.  However, there is no evidence that Officer Godinez ever asked defendant about the key and thus there is no evidence that defendant withheld consent.  Further, Marisol had common authority over the storage locker, and therefore her consent was valid even against defendant's nonconsent.  
United States v. Matlock
, 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974). 

Defendant argues that Officer Godinez never informed Marisol of her 
Miranda
 rights, nor did he inform her that she had the right to withhold consent.  However, 
Miranda
 warnings need not be given to obtain a valid consent.  
Spriegel
, 233 Ill. App. 3d at 493.  Further, ignorance of the right to refuse consent does not vitiate the voluntariness of the consent, but is merely one factor to consider when examining the totality of the circumstances.  
Spriegel
, 233 Ill. App. 3d at 493

Applying the totality of the circumstances test to the case at bar, we note that Officer Godinez testified that he first knocked on defendant's door and announced his office.  When he received no response, the officers forced open the door and informed defendant that they were there to execute a search warrant.  During the search, Officers escorted Marisol from the bedroom to the living room, where she sat on a couch with her son.  The officers searched for about an hour and a half, finding drugs, a gun, and a quantity of money.  Officer Godinez also found a key to some kind of container.  He researched the apartment for another hour but was unable to find the container that the key fit.  Officer Godinez then questioned Marisol alone in the living room; the other officers were away in the bedrooms.  As discussed above, Officer Godinez did not display a weapon, touch her, handcuff her, or speak in a tone of voice indicating that her compliance was mandatory.  Instead, he "fanned" the key and simply asked her where the key fit.  The trial court determined that Officer Godinez's actions did not override Marisol's will so as to render her answer to his question involuntary.  We cannot say the trial court's finding was clearly unreasonable, especially in light of Marisol's testimony that the cocaine found in the storage locker was not hers and defendant's statement to Officer Godinez that Marisol was unaware the storage locker contained cocaine.  Such testimony indicates that she voluntarily consented to the search of the locker because she thought it merely contained everyday items and was unaware that it contained drugs.   

People v. Casazza
, 144 Ill. 2d 414 (1991), 
People v. Haskell
, 41 Ill. 2d 25 (1968), 
People v. Kelly
, 76 Ill. App. 3d 80 (1979), and 
People v. Clark Memorial Home
, 114 Ill. App. 2d 249 (1969), cited by defendant, are inapposite and do not compel a different result.  In 
Casazza
, 
Kelly
, and 
Clark
, the courts held that consent to search was vitiated where it followed illegal conduct by the police officers.  By contrast, in the present case, the officers committed no illegal conduct prior to Marisol's consent to search.  In 
Haskell
, defendant's wife consented to the seizure of defendant's gun.  The court held that her consent was not voluntary, partly because the officers told her in no uncertain terms that she must turn over the gun to them.  
Haskell
, 41 Ill. 2d at 31-32.  By contrast, in the present case, Officer Godinez did not use similarly coercive language when requesting Marisol's consent to search the storage locker.  Accordingly, the trial court did not err in determining that Marisol's consent to search was voluntarily given.

Next, defendant argues that Marisol never gave her consent to search the storage locker, citing Marisol's testimony that no officer showed her a key or asked her for permission to search the basement or the locker.  Defendant concedes that Officer Godinez's testimony is to the contrary, but he argues that Officer Godinez was not a credible witness.  In support, defendant cites the conflict between Officer Godinez's testimony before the grand jury, where he stated that he searched storage locker number five, and his testimony at the suppression hearing and at trial, where he stated he searched storage locker number 10.  Defendant also refers to a variance between two sets of photographs showing the condition of the basement storage lockers after the execution of the search warrant.  The defense photographs showed that a number of the storage bins had been damaged and forcibly opened.  The State's photographs showed the lockers to be intact.  Defendant claims the variance in the photographs renders unbelievable Officer Godinez's testimony that the officers entered only the one storage locker belonging to defendant; defendant contends that the officers instead forced their way into multiple storage lockers.   The trial court is in the best position to judge the witnesses' credibility and resolve any conflicts in the evidence.  
People v. Kozlowski
, 278 Ill. App. 3d 40, 44-45 (1996).  The reviewing court will not substitute its judgment on these matters for that of the trial court unless it finds the court's ruling to be manifestly erroneous.  
Kozlowski
, 278 Ill. App. 3d at 45.

In the present case, the trial court was not manifestly erroneous in resolving the issues of credibility in favor of the State.  Officer Godinez explained during his testimony at the hearing on the motion to suppress that he had inadvertently stated before the grand jury that he searched storage locker number five; he corrected himself at the hearing on the motion to suppress and stated unequivocally that he searched storage locker number 10.

As for the dissimilar photographs, the State photographs were taken immediately after the search, whereas the defense photographs were taken a few hours after the search.  Thus, the defense photographs do not necessarily contradict Officer Godinez's testimony that he searched only defendant's locker and did not force entry into the other lockers; the defense photographs plausibly show damage to the lockers caused by persons other than the officers.

Defendant points to testimony from one of the residents of defendant's apartment building, Brett Searles, who testified that on the day of defendant's arrest, he heard noises coming from the basement that sounded like the lockers were being broken into.  However, there was an approximate one-hour lapse between the time the officers left and the time Searles went downstairs and discovered that several of the lockers had been damaged.  Thus, there was time for someone other than the officers to have damaged the lockers prior to Searles' discovery of them.

Defendant also points to the testimony of Officer Thomas Bobal, who testified he responded to a report of a break-in at the basement of defendant's apartment building at approximately 11:30 a.m. on July 28, 1994, the day after the execution of the search warrant on defendant's apartment.  Officer Bobal testified he observed damage to multiple storage lockers.  Again, Officer Bobal's testimony is not necessarily at odds with Officer Godinez's testimony that he entered only one locker; the damaged lockers viewed by Officer Bobal could have been broken into by persons other than Officer Godinez.

Defendant contends Officer Godinez's testimony that Marisol consented to the search of the storage locker is "absurd" and inherently unbelievable.  We disagree.  As discussed above,  Marisol testified that the drugs in the storage locker did not belong to her; Officer Godinez testified defendant told him that Marisol knew nothing about the drugs in the storage locker.  The trial court could conclude from such testimony that Marisol consented to the search of the storage locker because she thought that there was nothing incriminating to be found therein.  

Defendant also argues that there are other reasons to doubt Officer Godinez's credibility.  In particular, defendant points out that none of the police reports written by Officer Godinez indicated the number of the storage locker from which the drugs were recovered.  Defendant also contends defendant's key to the storage locker was never inventoried; the implication in defendant's argument is that Officer Godinez never showed Marisol any key, but instead broke into all the storage lockers until he found the drugs.   However, according to our review of the record, Officer Godinez testified that he 
did
 in fact inventory the key.  Further, Officer Godinez was shown People's exhibit number 8, which he identified as the key in question.  Thus, contrary to defendant's argument, Officer Godinez's testimony was not called into doubt by the absence of the key to the storage locker; rather, the key was inventoried and exhibited at trial. 

In conclusion, the trial court heard the testimony, saw the witnesses, and judged Officer Godinez to be a credible witness.  The trial court's finding is not manifestly erroneous, and therefore we will not substitute our judgment for its credibility determination.  See 
Kozlowski
, 278 Ill. App. 3d at 45.  Accordingly, we affirm the trial court's denial of defendant's motion to suppress.

Next, defendant argues his posttrial counsel was ineffective.  To establish a claim of ineffective assistance, defendant must show that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced defendant.  
People v. Albanese
, 104 Ill. 2d 504, 525 (1984).

 Defendant's posttrial counsel argued that defendant was unfit for trial because at the time of trial he was taking psychotropic medication.  The trial court ordered a fitness evaluation of defendant and ultimately concluded that defendant had been fit at trial.  Defendant argues that his posttrial counsel was ineffective for not also arguing that defendant was taking psychotropic drugs during the motion to suppress evidence and therefore that defendant was not fit during the hearing on the motion.

We disagree.  The due process requirement that a defendant be fit before being made to stand trial properly focuses on the date on which his trial commences, not the period or proceedings prior to it.  
People v. Murphy
, 160 Ill. App. 3d 781, 794 (1987).  Further, the legislature has stated that, even after a finding of unfitness, "the court may hear and rule on any pretrial motion or motions if the defendant's presence is not essential to a fair determination of the issues."  725 ILCS 5/104-11(d) (West 1996).  

The suppression motion concerned whether the police obtained Marisol's consent prior to searching the storage locker.  Defendant did not testify at the hearing, relying instead on the testimony of his wife to support the motion.  There was no evidence presented that defendant's presence was necessary for the proper determination of the consent issue; therefore, his fitness or lack thereof was not relevant to the trial court's ruling on the motion to suppress.   Accordingly, posttrial counsel was not ineffective for failing to raise the issue of defendant's fitness during the motion to suppress, as that issue had no bearing on the ultimate resolution of the motion.

Finally, defendant argues his posttrial counsel was ineffective for failing to argue that defendant's general mental state established a 
bona
 
fide
 doubt of fitness during the suppression hearing and trial, independent of whether he was using psychotropic drugs at the time.   We disagree.  Posttrial counsel made the decision to pursue what he thought was the strongest issue for defendant, that defendant was unfit for trial based on his ingestion of psychotropic medication.  We cannot say that counsel's decision was objectively unreasonable or that defendant was prejudiced thereby.  Accordingly, we reject defendant's argument that posttrial counsel rendered ineffective assistance.

For the foregoing reasons, we affirm the trial court.  As part of our judgment, we grant the State's request and assess defendant $150 for the costs of this appeal.

Affirmed.

ZWICK, P.J., and BUCKLEY, J., concur.