541 S.E.2d 837

**The STATE, Respondent,**

v.

**Burnella FORRESTER, Petitioner.**

**No. 25247.**

Supreme Court of South Carolina.

Heard March 21, 2000.

Decided Feb. 12, 2001.

Rehearing Denied March 7, 2001.

Senior Assistant Appellate Defender Wanda H. Haile, of South Carolina Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor E.L. Clements, III, of Florence, all for respondent.

TOAL, Chief Justice:

A jury convicted petitioner Burnella Forrester ("Forrester") of trafficking in crack cocaine. She appealed the trial court's admission into evidence of the crack cocaine seized from her purse. The Court of Appeals affirmed the conviction. We granted certiorari to review the decision of the Court of Appeals. We reverse.

### FACTUAL/PROCEDURAL BACKGROUND

At the time of Forrester's arrest, Allen Rhodes was a member of the Florence County Police Department's drug and weapon interdiction team. Part of his job entailed supervising the local train station and intercepting suspicious characters as they entered the city. According to his testimony, on November 13, 1995, Officer Rhodes observed Forrester arriving at the Florence train station with her juvenile son. While she was using a pay phone, Forrester apparently noticed Rhodes observing her and appeared startled. With his suspicions aroused, Rhodes followed Forrester and her son to a local Burger King. While the Forresters ate, Rhodes approached them for questioning.

Officer Rhodes testified that he identified himself as a member of the drug and weapons interdiction team. He claimed that after identifying himself to Forrester, she agreed to let him search her luggage, and they left the Burger King to conduct the search. Rhodes testified that while he searched her luggage, Forrester clutched her pocketbook tightly. Because he was suspicious of her actions, Rhodes asked to search her purse. Forrester, without surrendering

possession, held it open for him to see inside. Without requesting permission to search the purse, Officer Rhodes took the purse, felt it inside and out, tore out the bottom lining, and discovered the crack cocaine.[1]

Forrester's version of the events is similar, but portrays Rhodes as even more aggressive in his confrontation with her. Forrester claimed she told Rhodes nothing was in her purse, and she held it open for him to see inside. At that point, she testified Rhodes "snatched" the bag from her shoulder and reached into it, tearing it open and finding the crack cocaine. Forrester's son verified her version of the events. The trial judge ruled Forrester voluntarily consented to the search of her pocketbook. In neither version of the events did Rhodes inform Forrester of her constitutional right to refuse to give consent to search her pocketbook.

At trial, Forrester argued that she had not given consent to search her bag, and thus, that the crack cocaine was discovered in violation of the express right to privacy provision found in S.C. Const. art. I, § 10. She contended our state constitution provides a higher level of protection from government searches than the Fourth Amendment. Forrester argued Officer Rhodes' failure to inform her of her right to refuse consent to a search the purse invalidated the search, and the crack cocaine should have been excluded from evidence at her trial for trafficking in cocaine. The trial judge ruled the crack admissible. The Court of Appeals affirmed the trial court's ruling. *See State v. Forrester*, 334 S.C. 567, 514 S.E.2d 332 (Ct.App.1999). Forrester has appealed and the main issue before the Court is:

Does the South Carolina Constitution's prohibition on "unreasonable invasions of privacy" require suspects to be affirmatively informed that they have the right to refuse consent to a search of their possessions?

---

1. Officer Rhodes' testified: "And at that point, I removed the bag from her shoulder and did find the area where she had concealed the crack cocaine beneath the liner. And I was trying to find a way to get the crack out, and I ripped—I ripped this pocket open, and the liner of the pocket itself had been ripped out, and so it was beneath the liner of the rest of the purse."

LAW/ANALYSIS

## I. Preservation

■ The State argues the issue of Forrester's consent to search was not preserved for review. We disagree.

Prior to opening statements, Forrester argued to suppress the discovered cocaine on the grounds that she had not given consent for Officer Rhodes to take her purse and search it. One aspect of her argument was that the explicit right to privacy provision in S.C. Const. art. I, § 10 grants protection above and beyond the Fourth Amendment. She argued our state constitution required the officer to inform her of the right to refuse consent, and that Officer Rhodes exceeded his authority in the search of her purse. The trial court disagreed. The trial court refused to rule the right to privacy provision required Officer Rhodes to inform Forrester of her right to refuse consent. The case then proceeded directly to trial.

■ In most cases, "[m]aking a motion *in limine* to exclude evidence at the beginning of trial does not preserve an issue for review because a motion *in limine* is not a final determination. The moving party, therefore, must make a contemporaneous objection when the evidence is introduced." *See State v. Simpson*, 325 S.C. 37, 479 S.E.2d 57 (1996). However, where a judge makes a ruling on the admission of evidence on the record immediately prior to the introduction of the evidence in question, the aggrieved party does not need to renew the objection. The issue is preserved:

> Because no evidence was presented between the ruling and [the] testimony, there was no basis for the trial court to change its ruling. Thus, ... [the] motion was not a motion *in limine*. The trial court's ruling in this instance was in no way preliminary, but to the contrary, was a final ruling. Accordingly, [the defendant] was not required to renew her objection to the admission of the testimony in order to preserve the issue for appeal.

*State v. Mueller*, 319 S.C. 266, 268–69, 460 S.E.2d 409, 410 (Ct.App.1995). Here, the witness introducing the cocaine for the state was the initial witness in the trial. No evidence was taken between the trial court's ruling on the admission of the

cocaine and its introduction. Since no opportunity existed for the court to change its ruling, Forrester did not need to object a second time to the introduction of the cocaine for the issue to be properly preserved for review. *Samples v. Mitchell,* 329 S.C. 105, 495 S.E.2d 213 (Ct.App.1997); *see also* Toal, Vafai, & Muckenfuss, *Appellate Practice in South Carolina* 76 (1999).

## II. The Right to Privacy and Consensual Searches

### A. Relationship Between the Federal and State Constitutions

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, ...

U.S. Const. amend. IV. Beginning in the early twentieth century, the United States Supreme Court declared that evidence seized in violation of the Fourth Amendment must be excluded in federal criminal proceedings. *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Later, the Court applied the Fourth Amendment and its exclusionary rule to the individual states as well. *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). Therefore, all citizens enjoy this federal constitutional protection in every criminal proceeding.

In parallel with the protection of the Fourth Amendment, the South Carolina Constitution also provides a safeguard against unlawful searches and seizures. *See* S.C. Const. art. I. § 10. The relationship between the two constitutions is significant because "[s]tate courts may afford more expansive rights under state constitutional provisions than the rights which are conferred by the Federal Constitution." *State v. Easler,* 327 S.C. 121, 131 n. 13, 489 S.E.2d 617, 625 n. 13 (1997); *see also State v. Austin,* 306 S.C. 9, 409 S.E.2d 811 (Ct.App.1991). Therefore, state courts can develop state law to provide their citizens with a second layer of constitutional rights. *Id.* This relationship is often described as a recognition that the federal Constitution sets the floor for individual rights while the state constitution establishes the ceiling. *See*

*Segura v. Texas,* 826 S.W.2d 178, 182 (Tex.App.1992). Thus, this Court can interpret the state protection against unreasonable searches and seizures in such a way as to provide greater protection than the federal Constitution.

■ Especially important in this analysis is South Carolina's explicit constitutional right to privacy.[2] In addition to language which mirrors the Fourth Amendment, S.C. Const. art. 1 § 10 contains an express protection of the right to privacy:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures *and unreasonable invasions of privacy* shall not be violated, . . .

(emphasis added). Initially, even in the absence of a specific right to privacy provision, this Court could interpret our state constitution as providing more protection than the federal counterpart. However, by articulating a specific prohibition against "unreasonable invasions of privacy," the people of South Carolina have indicated that searches and seizures that do not offend the federal Constitution may still offend the South Carolina Constitution resulting in the exclusion of the discovered evidence.

Ten states have express right to privacy provisions in their constitutions.[3] South Carolina and five other states have their right to privacy provision included in the section prohibiting unreasonable search and seizures.[4] South Carolina and the other states with a right to privacy provision imbedded in the search and seizure provision of their constitutions have held such a provision creates a distinct privacy right that applies both within and outside the search and seizure context. *See,*

---

**2.** The U.S. Supreme Court bases the federal right to privacy in the protected "penumbra" óf specific guarantees of the Bill of Rights. *See Griswold v. Connecticut,* 381 U.S. 479, 487, 85 S.Ct. 1678, 1683, 14 L.Ed.2d 510 (1965). This analysis has engendered much controversy over the years among constitutional scholars and the Court itself.

**3.** Alaska Const. art. I, § 22; Ariz. Const. art. II, § 8; Cal. Const. art. I, § 1; Fla. Const. art. I, § 23; Hawaii Const. art. I, § 6; Ill. Const. art. I, § 6; La. Const. art. I, § 5; Mont. Const. art. II, § 10; S.C. Const. art. I, § 10; Wash. Const. art. I, § 7

**4.** They are Hawaii, Illinois, Louisiana, Washington, and Arizona.

*e.g., Singleton v. State,* 313 S.C. 75, 437 S.E.2d 53 (1993)(finding the state constitutional right to privacy prevented the forced medication of a death row inmate in preparation of execution). Furthermore, many of the states that have adopted explicit state constitutional right to privacy provisions have read their constitutions as applying protection above and beyond the protection provided by the federal Constitution. *See, e.g., State v. Church,* 538 So.2d 993 (La.1989)(disallowing a police roadblock under the state constitution's right to privacy even though it did not violate the Fourth Amendment).

The South Carolina Constitution, with an express right to privacy provision included in the article prohibiting unreasonable searches and seizures, favors an interpretation offering a higher level of privacy protection than the Fourth Amendment. The issue in the case before the Court is whether this privacy provision goes so far as to require informed consent to government searches.

## B. Informed Consent

■ Forrester argues our state's right to privacy provision should require police officers to inform citizens that they have the right to refuse consensual searches and without such admonition, a search is involuntary. We disagree.

■ This Court has previously rejected the argument that police officers must inform a suspect of the right to refuse consent prior to a search. *See State v. Wallace,* 269 S.C. 547, 238 S.E.2d 675 (1977). In *Wallace,* we applied a "totality of the circumstances" analysis for determining whether a search was voluntary. Therefore, like the federal standard, our state standard does not require a law enforcement officer conducting a search to inform the defendant of his right to refuse consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The lack of such warning is only one factor to be considered in determining the voluntary nature of the consent. *Wallace,* at 552, 238 S.E.2d at 677. Petitioner's position would make consent to search dependant on a *Miranda*-like warning given prior to the search. We reject such a requirement.

Eight of the nine other states that have an explicit right to privacy provision contained in their constitution have rejected Forrester's argument that suspects must be informed of their right to refuse consent to search.[5] Washington's Supreme Court has issued a limited ruling that officers must inform home owners of the right to refuse consent when the government attempts to search their home without a warrant. *See Washington v. Ferrier*, 136 Wash.2d 103, 960 P.2d 927 (1998). However, Washington's constitutional privacy provision is unique in that it specifically focuses on protecting the home.[6] Furthermore, Washington courts have not required informed consent in other governmental search situations. *See State v. Hastings*, 119 Wash.2d 229, 830 P.2d 658, 661 (1992)("Consent must be voluntary, but this does not mean that it must be made with full knowledge of the right to refuse the entry or search.").

---

5. *Gray v. State*, 596 P.2d 1154, 1158 (Alaska 1979)("The person giving the consent need not be advised of the right to refuse to allow a search prior to executing a valid consent to search, although the subject's awareness of the right to refuse is a factor in the determination of the voluntariness of the consent."); *State v. Acinelli*, 191 Ariz. 66, 952 P.2d 304, 308 (1998)("Whether a defendant knew he had a right to refuse the request to search is but one factor to be taken into account."); *People v. Mills*, 210 Cal.Rptr. 669, 672, 164 Cal.App.3d 652, 657 (1985)("Advisement by a law enforcement officer that one has the right to refuse a consent to search is unnecessary to a valid consent."); *Sims v. State*, 743 So.2d 97, 98 (Fla.1999)("Although knowledge of one's right to refuse a search without a warrant is a factor to be considered in determining whether the consent obtained was freely and voluntarily given, there is no per se requirement that a defendant must be informed of such right."); *State v. Kearns*, 75 Haw. 558, 867 P.2d 903, 909 (1994)("The police are not required to inform the person to be searched of his or her right to refuse consent, but their failure to so inform is a factor to be considered in determining whether consent to a search was freely and voluntarily given."); *People v. Leon*, 311 Ill.App.3d 624, 243 Ill.Dec. 605, 723 N.E.2d 1206, 1214 (2000)("Further, ignorance of the right to refuse consent does not vitiate the voluntariness of the consent, but is merely one factor to consider when examining the totality of the circumstances."); *State v. Overton*, 596 So.2d 1344, 1353 (La.App. 1992)("While the defendant was not verbally informed of his right to refuse to consent to this search, such a warning is not required."); *State v. Steinmetz*, 288 Mont. 527, 961 P.2d 95, 100 (1998)("However, '[t]he police do not have to warn a person of the right to withhold consent.' ").

6. "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Wash. Const. art. I, § 7.

As noted by the Court of Appeals, the drafters of our state constitution's right to privacy provision were principally concerned with the emergence of new electronic technologies that increased the government's ability to conduct searches. *See* Committee to Make a Study of the Constitution of South Carolina, 1895, Minutes of Committee Meeting 6 (Sept. 15, 1967). According to their minutes, "The committee agreed that [the search and seizure provision] should remain, but that is [sic] should be revised to take care of the invasion of privacy through modern electronic devices." *Id.* However, the committee also recognized that the provision would have an impact beyond just the area of electronic surveillance. As Committee Member Sinkler stated, "I think this is an area that, really, should develop and should not be confined to the intent of those who sit around this table." *Id.* at 6 (Oct. 6, 1967).

Furthermore, the committee was aware they were drafting a provision that operated separately from the Fourth Amendment.[7] During their discussions, the committee characterized the then prevailing United States Supreme Court standard as a liberal approach to the protection against search and seizure. *Id.* at 5 (Oct. 6, 1967). One committee member noted that "It is possible, too, that there will be a swing back from this liberal interpretation." *Id.* at 7 (Oct. 6, 1967).

Forrester's "prior admonition rule" would subsume the "totality of the circumstances" test followed by this Court in *State v. Wallace*, 269 S.C. 547, 238 S.E.2d 675 (1977). Forrester also fails to cite any authority from South Carolina or any other jurisdiction adopting the rule she advocates. Except for the narrow Washington state exception for warrantless searches of the home, no precedential support for Forrester's position can be found.[8] In conclusion, while our state constitu-

---

7. It is important to note that committee minutes will not be controlling of the intent behind, or interpretation of, our state constitution. *See Greenville Baseball, Inc. v. Bearden*, 200 S.C. 363, 371, 20 S.E.2d 813, 817 (1942); *Tallevast v. Kaminski*, 146 S.C. 225, 143 S.E. 796 (1928). This fact was even noted in Committee Member Sinkler's observation that their discussions would not control any subsequent interpretation. We include these discussions for their historical context and interest.

8. The Court of Appeals partially relied on *Illinois v. Brownlee*, 293 Ill.App.3d 315, 227 Ill.Dec. 692, 687 N.E.2d 1174 (1997) in rejecting Forrester's argument. The Illinois Supreme Court has overruled

tion may provide a higher level of protection in the search and seizure context, it does not go so far as to require informed consent prior to government searches.

## C. Forrester's Consent[9]

 Although our state constitution did not require Officer Rhodes to inform Forrester of her right to refuse giving consent to search her purse, Officer Rhodes exceeded the scope of Forrester's consent when he proceeded beyond the visual inspection of the purse granted by Forrester to an intense physical examination of the purse. As a result, the crack cocaine should have been excluded at trial.

 Under our state constitution, suspects are free to limit the scope of the searches to which they consent. When relying on the consent of a suspect, a police officer's search must not exceed the scope of the consent granted or the search becomes unreasonable. In a situation where a citizen's response to an officer's request to "look into" a container, such as her purse, is merely offering the officer a restricted view of the inside of the container while retaining possession, a reasonable police officer would not assume that this guarded action also granted permission to take possession of, search thoroughly, and even partially destroy the container itself. *Cf.*, *State v. Garcia*, 127 N.M. 695, 986 P.2d 491, 494 (1999)("Although an individual consenting to a vehicle search should expect that search to be thorough, he need not anticipate that the search will involve the destruction of his vehicle, its parts or contents."). The current situation could be very different had Forrester surrendered possession of her purse to Officer Rhodes without placing any restriction on the scope of the search. However, even in a situation where they have received a general and unqualified consent, "the police do not

---

*Brownlee*, although on other grounds. *See Illinois v. Brownlee*, 186 Ill.2d 501, 239 Ill.Dec. 25, 713 N.E.2d 556 (1999).

**9.** The State's exclusive argument has been that the search was properly conducted pursuant to Forrester's consent. As such, the State has not argued Officer Rhodes had justification to search Forrester pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) or any other theory.

have carte blanche to do whatever they please." 3 Wayne R. LaFave, *Search and Seizure* § 8.1(c), at 612 (3d ed.1996).

Forrester's response to the request to search her purse was not to surrender possession of the purse for an unrestricted search, but instead she provided a limited view of the purse's interior, obviously with the hope that Officer Rhodes' suspicions would be satisfied and she would escape detection. The difference between her reaction and the handing over possession of the purse or granting verbal permission to search her purse is obvious. If this Court held that Forrester's consent, clearly limited by her actions, opened her purse up to the intrusive inspection executed by Officer Rhodes, we would eviscerate the distinction between limited and unlimited consent in police searches. Such a result would ignore a citizen's right under our constitution to limit the scope of their consent in government searches.

### CONCLUSION

Based on the foregoing, we **REVERSE** the decision of the Court of Appeals and find the crack cocaine should have been excluded at trial.

MOORE and WALLER, JJ., concur.

BURNETT, J., concurring and dissenting in a separate opinion.

BURNETT, Justice (concurring and dissenting):

I agree with the majority's holding in II.B that the right to privacy contained in the South Carolina Constitution does not require police officers to inform citizens they have a right to refuse consensual searches. I dissent from the reversal of petitioner's conviction on a ground which has never been raised to nor ruled upon by any court.

As noted by the Court of Appeals and petitioner herself, the sole issue on appeal is whether the South Carolina Constitution's express protection against unreasonable invasions of privacy mandates that citizens be affirmatively informed of their right to refuse consent to a search. *See* S.C. Const. art. I, § 10. The majority characterizes this as the "main" issue, when in fact it is the only issue ever argued by petitioner. We all agree the South Carolina Constitution requires no such prophylactic warning. However, the majority goes beyond the

issue raised to hold the search of petitioner's pocketbook exceeded the scope of her consent. I dissent from this holding.

Following an *in limine* hearing, the trial court denied petitioner's motion to suppress the crack cocaine found in her purse, expressly ruling the search was consensual. That ruling was not appealed and is therefore the law of the case. *ML–Lee Acquisition Fund v. Deloitte & Touche*, 327 S.C. 238, 489 S.E.2d 470 (1997) (an unchallenged ruling, right or wrong, is the law of the case). Petitioner has never argued, below or to this Court, that the search of her pocketbook exceeded the scope of her consent. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 497 S.E.2d 731 (1998) (issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review); *see also* Rule 207(b)(1)(B), SCACR (no point will be considered which is not set forth in the statement of the issues on appeal).

Because of the majority's *sua sponte* disposition of this issue, the State has been denied the opportunity to argue a contrary position. The majority raises for petitioner an issue never argued by her at any point, gives the State no opportunity to refute the argument, and *expressly refuses* to consider whether the search was justified under any other theory, such as *Terry v. Ohio*,[10] which, contrary to the majority's assertion, the State argued as an additional sustaining ground. (*See* footnote 9). The majority's action ignores long-settled preservation rules and severely prejudices the State. See *I'On v. Town of Mt. Pleasant*, 338 S.C. 406, 526 S.E.2d 716 (2000) (Shearouse Adv. Sh. No. 2 at 1). In *I'On*, we explained an appellate court may affirm for any reason appearing in the record, but may reverse only for a reason raised to and ruled upon by the trial court and argued on appeal.

Finally, I also disagree with dicta in the majority opinion concerning the significance of the right to privacy provision in

---

**10.** 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (officer may briefly detain and question a suspect upon reasonable suspicion that the person is involved in criminal activity and may frisk the suspect upon reasonable suspicion of danger). The officer here testified he initially asked permission to search petitioner's purse because of his concern, based on the way she was clutching it, that the purse might contain a weapon.

the South Carolina Constitution. Article I, section 10 states: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and unreasonable invasions of privacy shall not be violated." S.C. Const. art. I, § 10. I disagree with the majority's assertion this language "favors an interpretation offering a higher level of privacy protection than the Fourth Amendment." On the contrary, I believe our constitution's protection against unreasonable invasions of privacy operates separately from the search and seizure provisions and provides distinct protection. *See Singleton v. State,* 313 S.C. 75, 437 S.E.2d 53 (1993) (state constitutional right of privacy would be violated by forced medication of inmate to facilitate execution). Like the protections offered by the Fourth Amendment, the privacy protections in the state constitution are textually based on reasonableness. *See* U.S. Const. amend. IV; S.C. Const. art. I, § 10. I would not interpret Article I, section 10 to offer greater protection in the search and seizure context than that offered by the Fourth Amendment's "totality of the circumstances" test. *See State v. Wallace,* 269 S.C. 547, 238 S.E.2d 675 (1977); *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

I would affirm petitioner's conviction for trafficking in crack cocaine because the only argument made for reversal is without merit.