# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Travis Latrell Lawrence, Petitioner.

Appellate Case No. 2021-001492

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Dorchester County
Maite Murphy, Circuit Court Judge

---

Opinion No. 28156
Heard February 8, 2023 – Filed June 7, 2023

---

## AFFIRMED AS MODIFIED

---

Appellate Defenders Susan Barber Hackett and Jessica M. Saxon, both of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Senior Assistant Attorney General Mark Reynolds Farthing, both of Columbia; and Solicitor David Michael Pascoe Jr., of Orangeburg, for Respondent.

---

**CHIEF JUSTICE BEATTY:** A jury convicted Travis Lawrence of attempted murder following a brawl at the home of a friend, Clayton Baxter. At trial, Lawrence argued that he acted in self-defense. To support this, he subpoenaed

his co-defendant present at the scene, Terell Bennett. Bennett, however, invoked his Fifth Amendment right[1] while awaiting his own, separate trial. Bennett, like Lawrence, was indicted for attempted murder, armed robbery, and possession of a weapon during the commission of a violent crime.[2]

The trial court prevented Bennett's testimony, and the court of appeals upheld the trial court's decision. We conclude Bennett faced a hazard of incrimination and properly invoked his Fifth Amendment right.

## I. FACTS & PROCEDURAL HISTORY

According to Baxter, on July 2, 2016, he was contacted by Bennett, who told Baxter he wanted to come over to "borrow some money." Baxter lived in Charleston County with a friend. Baxter and Bennett knew each other well, and treated each other as relatives. In fact, Bennett called Baxter "Unc," and Baxter called Bennett "Nephew." Baxter admitted that he had marijuana in the house and had smoked some that day.

Bennett arrived and called Baxter to ask if anyone was home and to let Baxter know he was outside. Baxter went to meet Bennett outside and noticed a set of legs walking behind Bennett. Bennett stepped to the right, and a man stood there, holding a revolver at Baxter. From prior interactions, Baxter recognized this man as Lawrence.

Lawrence ordered Baxter to give him money. Baxter kept cash in the home from his Social Security benefits. Baxter testified that he waited for the two to "make one mistake so [he could] capitalize on it." Baxter indicated that, inside the townhome, Lawrence "raised[3]" the gun down, and a struggle ensued among the three men. At this point, the gun accidentally fired into the ceiling. No one was injured, including the friend who lived with Baxter and was upstairs at the time. Amid the struggle, Lawrence went into the kitchen, and Baxter testified that Lawrence grabbed a knife and slashed him. Lawrence and Bennett allegedly robbed

---

[1] Both the United States Constitution and the South Carolina Constitution contain this protection. U.S. Const. amend. V; S.C. Const. art. I, §12. We refer to both collectively as "the Fifth Amendment."

[2] Later after Lawrence's trial, Bennett pleaded guilty to attempted murder, and the State dismissed the other charges.

[3] From the record, it appears Lawrence *lowered* the gun.

Baxter of seventy-five dollars and left with the weapons. Although Baxter was severely injured, he managed to call for help. Lawrence disputed Baxter's version of events through his self-defense claim at trial.

The State indicted Lawrence for armed robbery, attempted murder, and possession of a firearm.[4] During the State's case-in-chief, the trial court clarified that Lawrence was prepared to call the co-defendant, Bennett, as a witness. Bennett's counsel informed the court that Bennett would invoke his Fifth Amendment privilege.

After hearing arguments from both sides, the trial court decided to question Bennett *in camera*. The trial court excluded counsel for both Lawrence and the State; however, Bennett's counsel attended the hearing. Neither party objected to the procedure; in fact, Lawrence's counsel suggested that the court proceed with this hearing.

Bennett's *in camera* testimony tended to show that he and Lawrence traveled to Baxter's house that day to purchase marijuana. Bennett's version of events would establish that Baxter attacked Lawrence first. Presumably, and as Lawrence argues now on appeal, Lawrence would have used Bennett's testimony to show he acted in self-defense. The trial court was made aware of the nature of Bennett's testimony. In fact, Lawrence's counsel explained, in asking for the court to conduct the *in camera* examination, "[the State] know[s] that the alleged co-defendant has come in and told them this was an act of self-defense."

The trial court clarified the gravity of the situation during its *in camera* examination: "I just want to make sure I understand the full breadth of what you're saying *so I know whether or not you can invoke your right as far as implication*. You're putting yourself *at the scene of this alleged crime*; do you understand that?" Bennett's counsel argued that any questioning by the State would reveal incriminating information.

Later during the trial, the court made its ruling on the record regarding Bennett's testimony:

_____

[4] Besides Baxter's identification, the State established the identities of Bennett and Lawrence by Bennett's gold Cadillac. Bennett and Lawrence used the gold Cadillac on the day of the incident, and Baxter testified that he knew Bennett drove that vehicle.

His silence is certainly justified in this matter and it appears to be that if he were allowed to testify, that he would incriminate himself and any questions, even those specific single questions may not be overtly incriminating—but would be incriminating through any further confessional proof so the [c]ourt will allow him to invoke his right against self-incrimination and protect him from testifying in this matter.

The jury convicted Lawrence of attempted murder, but found him not guilty of armed robbery and possession of a firearm.[5] The trial court sentenced Lawrence to thirty years in prison.

The court of appeals affirmed Lawrence's conviction for attempted murder in *State v. Lawrence*, 435 S.C. 231, 865 S.E.2d 800 (Ct. App. 2021), without oral argument pursuant to Rule 215, SCACR. The court concluded the hazard of incrimination was openly apparent because Bennett was already being prosecuted as a co-defendant and "[a]lmost anything Bennett could utter about the incident would likely be used against him at his upcoming trial." *Id.* at 241, 865 S.E.2d at 805.

## II. STANDARD OF REVIEW[6]

"In criminal cases, this Court only reviews errors of law." *State v. Gamble*, 405 S.C. 409, 415, 747 S.E.2d 784, 787 (2013). "[T]his Court reviews questions of law de novo." *State v. Adams*, 409 S.C. 641, 647, 763 S.E.2d 341, 344 (2014).

## III. DISCUSSION

Lawrence argues that the hazards of self-incrimination from Bennett's testimony were not openly apparent because the purported crime, the purchase of marijuana, was never completed. Lawrence maintains that Bennett's testimony would show he and Lawrence acted in self-defense. Conversely, the State contends that the hazard of self-incrimination was openly apparent because Bennett was

---

[5] At first, the jury was deadlocked, and the trial court instructed the jurors pursuant to *Allen v. United States*, 164 U.S. 492 (1896).

[6] Both parties urge this Court to follow several other cited jurisdictions and adopt a specific, abuse-of-discretion standard of review in cases involving the invocation of the Fifth Amendment. We do not find a persuasive basis to do so and conclude our broad, general standard sufficiently allows review of the trial court's ruling and handling of the *in camera* hearing.

awaiting trial on indictments resulting from the same incident and there was "obvious potential" for any answers to be incriminating.

The court of appeals concluded the hazard of incrimination was openly apparent: "Almost anything Bennett could utter about the incident would likely be used against him at his upcoming trial." *Lawrence*, 435 S.C. at 241, 865 S.E.2d at 805. We agree.

Both the United States Constitution and the South Carolina Constitution provide that no person shall "be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; S.C. Const. art. I, § 12. While the South Carolina Constitution often provides more protection than the federal Constitution,[7] this Court has previously observed that "the analysis under [these] two provisions is identical." *Grosshuesch v. Cramer*, 377 S.C. 12, 23 n.2, 659 S.E.2d 112, 118 n.2 (2008). Additionally, the General Assembly has codified protections in criminal questioning, stating generally: "No person shall be required to answer any question tending to incriminate himself." S.C. Code Ann. § 19-11-80 (2014).

Before analyzing the merits of the Fifth Amendment invocation, we conclude the case law and the text of article I, section 12 support a conclusion that the South Carolina Constitution, in this instance, provides the same protections as the United States Constitution. Both provisions, substantively, share the same wording: "[No person shall] be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; S.C. Const. art. I, § 12. Further, we previously have recognized the same conclusion. *Grosshuesch*, 377 S.C. at 23 n.2, 659 S.E.2d at 118 n.2.

Returning to the basis of a proper invocation, this Court has explained that the Fifth Amendment is "an assurance that an individual will not be compelled to produce evidence or information which may be used against him in a later criminal proceeding." *Grosshuesch*, 377 S.C. at 22, 659 S.E.2d at 117 (citing *Maness v. Meyers*, 419 U.S. 449, 461 (1975)). Further, the privilege extends not only beyond incriminating answers or information but also "to answers furnishing a link in the chain of evidence needed to prosecute an individual." *Id.* (citing *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).

---

[7] *See, e.g.*, *State v. Forrester*, 343 S.C. 637, 643, 541 S.E.2d 837, 840 (2001) ("This relationship is often described as a recognition that the federal Constitution sets the floor for individual rights while the state constitution establishes the ceiling.").

The protections of the Fifth Amendment are not limitless: "[I]t is well-settled that an invocation of the privilege is confined to instances where a person has reasonable cause to apprehend danger from his answer." *Id.* (citing *Hoffman*, 341 U.S. at 486). Moreover, a trial court is limited to compel a person's testimony if it is "perfectly clear" the testimony will not result in criminal liability and the testimony "cannot possibly have [a] tendency to incriminate." *Hoffman*, 341 U.S. at 486, 488 (internal quotation marks omitted).

Here, we agree that the hazards of incrimination were openly apparent. Bennett was present at the scene with Lawrence and established he was there to purchase marijuana. At the time of Lawrence's trial, Bennett awaited his own trial from the same incident. We agree with the conclusion of the court of appeals that, "[a]lmost anything Bennett could utter about the incident would likely be used against him at his upcoming trial." *Lawrence*, 435 S.C. at 241, 865 S.E.2d at 805. While Bennett certainly could have given incriminating answers subject to the invocation of the Fifth Amendment right, *not all* questions could have elicited an incriminating response. However, it was patently clear that Lawrence was only interested in Bennett's conversation with an investigator about the circumstances of the crime.

Lawrence's counsel was not present for the *in camera* questioning of Bennett. Importantly, neither party argues—nor objected to—the procedure used in conducting the *in camera* hearing. *See, e.g.*, *Herron v. Century BMW*, 395 S.C. 461, 465, 719 S.E.2d 640, 642 (2011) ("At a minimum, issue preservation requires that an issue be raised to and ruled upon by the trial judge."). Regardless, we feel compelled to address those issues for future guidance.

At the outset, we emphasize the protections afforded by the *in camera* nature of the examination. *See State v. Hughes*, 328 S.C. 146, 150, 152, 493 S.E.2d 821, 823 (1997) ("It is desirable the jury not know that a witness has invoked the privilege against self-incrimination since neither party is entitled to draw any inference from such invocation. . . . [Neither party] should be allowed to call witnesses who either side knows will invoke the Fifth Amendment in front of the jury and then be subject to inferences in a form not subject to cross-examination.").

Nevertheless, the trial court should observe two more procedural precautions: (1) unless the witness is the defendant in the case on trial, the trial court should not allow a "blanket" invocation of the Fifth Amendment, and (2) under normal circumstances, the trial court should allow counsel for both the witness and the party calling the witness to be present at the *in camera* examination.

First, while conducting an *in camera* hearing, the Fifth Amendment assertion should be made on a question-by-question basis. In concluding a witness could refuse to answer questions, the United States Supreme Court in *Hoffman* explained, "To sustain the privilege, it need only be evident from the implications of *the question*, in the setting in which it is asked, that a responsive answer to *the question* or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." 341 U.S. at 486–87 (emphasis added).

Reiterating that a witness himself must assert the privilege, this Court previously stated, "[I]n any case, it is well settled that a witness who is not also a defendant can invoke that privilege *only after the incriminating question* has been put." *State v. McGuire*, 272 S.C. 547, 550–51, 253 S.E.2d 103, 105 (1979) (holding, under the narrow circumstances of the case, the trial court erred in refusing to allow the cross-examination of a witness about previously admitted crimes) (emphasis added). Most recently, in *Grosshuesch*, we established there are, at least, two categories of incriminating *questions*. We identified the former as questions whose incriminating nature are facially evident. *Grosshuesch*, 377 S.C. at 23, 659 S.E.2d at 117–18. The latter are incriminating based on contextual proof. *Id.* at 23, 659 S.E.2d at 118. Our emphasis on the trial judge's duty to ascertain the incriminating nature of questions demonstrates the need to have an assertion of the Fifth Amendment privilege in response to individual questions.

Second, the trial court should have allowed the presence of counsel for both Bennett and Lawrence during the *in camera* hearing. Generally, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (concluding, in another context, that a criminal defendant did not establish his presence would have been useful or beneficial during a competency hearing). Certainly, questioning Bennett was a critical portion of Lawrence's trial because Bennett was the only other witness and would establish Lawrence's claim of self-defense. Therefore, Lawrence's counsel should have been present for Bennett's questioning and should have played an active role in asking the questions and proffering testimony for the trial court. However, all questions should have been reviewed by the trial judge before Bennett was allowed to answer. In this case, the trial court was well aware of the nature and context of the questions that Lawrence wanted Bennett to answer.

## IV. CONCLUSION

We hold the court of appeals correctly concluded that Bennett faced a hazard of self-incrimination.

**AFFIRMED AS MODIFIED.**

**KITTREDGE, FEW, JAMES, JJ., and Acting Justice Kaye G. Hearn, concur.**