486 S.E.2d 276

**The STATE, Appellant,**

v.

**Charles A. LESLEY, Respondent.**

**No. 2676.**

Court of Appeals of South Carolina.

Heard May 6, 1997.

Decided June 9, 1997.

642

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley Elliott, and Senior Assistant Attorney General Norman Mark Rapoport, Columbia, Solicitor George M. Ducworth, Anderson for appellant.

Donald Chuck Allen and William E. Phillips, Anderson, for respondent.

GOOLSBY, Judge:

This is a criminal case. The grand jury indicted the defendant Charles A. Lesley, charging him with unlawful possession of a firearm, trafficking in crack cocaine, and trafficking within

proximity of a school. On Lesley's motion, the trial court suppressed evidence seized from him after a traffic stop. The State appeals. We reverse.

While on patrol, Officer Oscar Clamp of the Anderson Police Department heard a communication made to another officer by the dispatcher. The dispatcher told the other officer to go to the Westview Heights Apartments. The dispatcher related a woman said she had called the police department a couple of days earlier to report a shooting incident and now was reporting two cars driven by black males had just driven by her home and the drivers had "pointed" at her. According to the dispatcher, their actions made the caller "afraid for her life" because they made her fear retaliation. The dispatcher reported the woman described one of the vehicles as a brown-colored Honda with paper tags of a local automobile dealer, "Breakaway Motor[s]." The dispatcher warned about the possibility of the drivers having weapons on their persons or in their cars.

Based on the dispatch, Officer Clamp headed for the area while another officer went to talk with the complainant. When Officer Clamp arrived, he spotted a brown Honda with Breakaway tags. He stopped the car and asked the driver, a black male who he later learned was Lesley, for his driver's license. At Officer Clamp's request, Lesley stepped from the car. Officer Clamp then patted Lesley down and, in doing so, found a loaded .380 revolver concealed in Lesley's pants. He immediately arrested Lesley, charging him with unlawful possession of a weapon.

Later, when officers searched Lesley at the jail, they discovered a plastic bag hidden in Lesley's underwear. The bag contained crack cocaine.

The trial court suppressed the evidence, finding no reasonable basis supported the initial stop. We, however, hold the trial court's ruling was erroneous as a matter of law.

 Police may stop a motor vehicle and briefly detain and question an occupant if they have a reasonable suspicion that the occupant is involved in criminal activity. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *State v. Robinson*, 306 S.C. 399, 412 S.E.2d 411 (1991). This suspicion must be based on "specific and articulable facts

which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). The police may also order an occupant out of the vehicle and, if the exercise of reasonable caution so warrants, frisk the occupant for weapons. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

The term "reasonable suspicion" requires "a particularized and objective basis" that would lead one to suspect another of criminal activity. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981). In determining whether reasonable suspicion exists, "the whole picture" must be considered. *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989).

Before stopping Lesley and frisking him on the occasion in question, Officer Clamp understood the following from the information related to him by the dispatcher and his own observations: (1) a female complainant had two days earlier reported a shooting incident to the police; (2) the complainant saw two black males in two separate cars drive by her home; (3) she described one automobile as a brown-colored Honda bearing paper tags that advertised Breakaway; (4) the driver in each car had made a gesture toward her; (5) she felt their actions were connected with the shooting incident; (6) there could be weapons on the drivers' persons or in their cars; and (7) a brown-colored Honda equipped with Breakaway paper tags and driven by a black male was in the area where the cars were reported as having been seen.

The officer could reasonably have believed (1) Lesley could have been one of the two black males who had gestured toward the complainant; (2) the complainant had reported the matter because she viewed the drivers' actions as threatening; (3) the drivers had gestured threateningly toward the complainant to warn of possible retaliation because she had reported the shooting incident to the authorities; (4) Lesley, whom he saw driving a brown-colored Honda with Breakaway tags, was one of the drivers who had gestured threateningly toward the complainant; and (5) Lesley would be armed and dangerous. This was no baseless stop; rather the situation was one that cried out for investigation. Indeed, Officer

Clamp would have been remiss in his duties had he failed to stop the brown-colored Honda, to order Lesley from the car, and to frisk Lesley for a weapon.

Because there was a reasonable suspicion to stop Lesley, Lesley's arrest for unlawful possession of the gun was proper and any evidence seized during the stop was admissible. The crack cocaine taken from Lesley's person at the jail was also admissible because it was seized incident to a lawful arrest. *State v. Morris,* 312 S.C. 116, 439 S.E.2d 291 (Ct.App.1993). The trial court erred, therefore, when it suppressed the evidence in question.

REVERSED AND REMANDED.

HOWELL, C.J., and ANDERSON, J., concur.