KONDUROS, J.:
*608 **125 Felix Kotowski appeals his convictions for manufacturing methamphetamine and possession of less than one gram of methamphetamine, arguing the trial court erred in (1) denying his motion to suppress evidence seized during a "knock and talk," (2) denying his motion to suppress evidence seized during a protective sweep of a residence where Kotowski was an overnight guest, and (3) admitting National Precursor Log Exchange (NPLEx) records into evidence. We affirm.
FACTS/PROCEDURAL HISTORY
On June 13, 2014, Sergeant Frank Thompson from the Dorchester County Sheriff's Office received an anonymous tip about the possibility of a drug house at 111 Marsh Point Road. Sergeant Thompson immediately checked NPLEx, which is a system that provides data used by pharmacies and law enforcement to track sales of pseudoephedrine. Sergeant Thompson's search revealed several pseudoephedrine purchases by Michelle Vining, the homeowner, as well as some by Brian Edwards. Sergeant Thompson set up an alert to be notified for any subsequent pseudoephedrine purchases by these individuals.
Sergeant Thompson also began to conduct "spotty surveillance" of the residence, mainly consisting of drive-by viewings. From this surveillance, Sergeant Thompson confirmed Vining's vehicle was parked at the residence. On one occasion, Sergeant Thompson observed a vehicle belonging to William Cherry parked at the residence. Sergeant Thompson was familiar with Cherry because Cherry's father had been convicted of methamphetamine related offenses.
On October 29, 2014, Sergeant Thompson received three NPLEx notifications indicating Vining had attempted to purchase pseudoephedrine three separate times. Two of Vining's attempts were blocked because she would have exceeded the statutory threshold. Vining successfully purchased a smaller amount at a different store on her third attempt. Because of these three transactions, Sergeant Thompson decided to conduct a knock and talk at Vining's residence the following day.
Sergeant Thompson, along with Detectives Daniel Lundberg and Brandon Allen-all of the Dorchester County Metro Narcotics Unit-arrived at Vining's residence the following **126 day wearing clothing indicating they were law enforcement. After knocking on the door, Sergeant Thompson saw someone looking through the blinds on the right side of the house. He requested the person come to the door to no response. After knocking a second time, Detective Lundberg observed an individual at a second story window on the right side. After a third knock, Sergeant Thompson spotted an individual at a second story window, this time on the left side. After the third knock, Kotowski opened the door, stepped outside, and closed the door behind him.
When Kotowski stepped outside, Sergeant Thompson was "immediately overwhelmed with the odor of ammonia" coming from Kotowski. When asked if he lived at the residence, Kotowski stated he did not and provided he was there with his girlfriend Lisa. Kotowski called for Lisa to come to the door and when she did not, went inside the house to retrieve her. Kotowski attempted to close the front door behind him when he re-entered the residence, but Sergeant Thompson held the door open with his foot.
When Lisa came to the door, Sergeant Thompson asked her if she knew the location of Michelle Vining, to which Lisa answered she did not. As the conversation progressed, Lisa admitted to being Michelle Vining. Sergeant Thompson explained the officers received a tip concerning methamphetamine manufacturing occurring at the residence. Sergeant Thompson asked her if she would consent to a search of the residence, and Vining declined. Sergeant Thompson then asked if anyone else lived at the residence. According to Sergeant Thompson, Vining "was pretty deceptive about her answer and kind of hem hawing."
*609 Believing something to be amiss, Sergeant Thompson ordered Detective Allen and Detective Lundberg to conduct a protective sweep of the residence while he contacted another officer to obtain a search warrant for the residence. During the protective sweep, Detective Lundberg and Detective Allen encountered a "heavy haze or a gaseous atmosphere" emanating from an upstairs bathroom and upon opening the door, were confronted by an overwhelming smell of ammonia. Based on evidence in plain sight during the protective sweep, a **127 search warrant was issued, and Kotowski and Vining were arrested.
A grand jury indicted Kotowski on March 16, 2015, for manufacturing methamphetamine and possession of less than one gram of methamphetamine. Prior to trial, Kotowski moved to suppress the evidence seized in the house. The trial court denied Kotowski's motion. At the conclusion of trial, the jury found Kotowski guilty of both counts. The trial court sentenced Kotowski to concurrent terms of seven years' imprisonment for manufacturing and three years' imprisonment for possession of less than one gram of methamphetamine. This appeal followed.
STANDARD OF REVIEW
"In criminal cases, the appellate court sits to review errors of law only." State v. Baccus , 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." State v. Gaster , 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." Clark v. Cantrell , 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000). "On appeal from a motion to suppress on Fourth Amendment grounds, this [c]ourt applies a deferential standard of review and will reverse only if there is clear error." State v. Counts , 413 S.C. 153, 160, 776 S.E.2d 59, 63 (2015) (quoting Robinson v. State , 407 S.C. 169, 180-81, 754 S.E.2d 862, 868 (2014) ).
LAW/ANALYSIS
I. Knock and Talk
Kotowski argues the trial court erred in denying his motion to suppress evidence found following the knock and talk and subsequent protective sweep of the house. He maintains the law enforcement officers did not have reasonable suspicion to conduct a knock and talk and therefore violated his right to privacy under Article I, Section 10 of the South Carolina Constitution. We disagree.
**128 The Fourth Amendment to the United States Constitution protects a person's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. "Generally, the Fourth Amendment requires the police to have a warrant in order to conduct a search." Counts , 413 S.C. at 163, 776 S.E.2d at 65 (quoting Robinson v. State , 407 S.C. 169, 185, 754 S.E.2d 862, 870 (2014) ). "In parallel with the protection of the Fourth Amendment, the South Carolina Constitution also provides a safeguard against unlawful searches and seizures." Id. at 164, 776 S.E.2d at 65 (quoting State v. Forrester , 343 S.C. 637, 643, 541 S.E.2d 837, 840 (2001) ). "The relationship between the two constitutions is significant because '[s]tate courts may afford more expansive rights under state constitutional provisions than the rights which are conferred by the Federal Constitution.' " Id. (quoting Forrester , 343 S.C. at 643, 541 S.E.2d at 840 ). "Evidence seized in violation of the warrant requirement must be excluded from trial." Id. at 163, 776 S.E.2d at 65 (quoting Robinson , 407 S.C. at 185, 754 S.E.2d at 870 ). "However, a warrantless search may nonetheless be proper under the Fourth Amendment if it falls within one of the well-established exceptions to the warrant requirement." Id. (quoting Robinson , 407 S.C. at 185, 754 S.E.2d at 870 ).
The Counts court looked to other jurisdictions to determine what sort of procedure should be necessary to protect citizen's right to privacy. Specifically, the court analyzed "whether law enforcement needs to: (1) have probable cause or reasonable suspicion to approach the private residence; or (2) inform the citizen of his or her right to refuse consent to search."
*610 Id. at 171, 776 S.E.2d at 69. The court concluded, "rather than enunciating an unyielding rule or eliminating the 'knock and talk' technique in its entirety, we hold that law enforcement must have reasonable suspicion of illegal activity at a targeted residence prior to approaching the residence and knocking on the door." Id. at 172, 776 S.E.2d at 70.
Reasonable suspicion consists of " 'a particularized and objective basis' that would lead one to suspect another of criminal activity." State v. Lesley , 326 S.C. 641, 644, 486 S.E.2d 276, 277 (Ct. App. 1997) (quoting United States v. Cortez , 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ). "Reasonable suspicion is more than a general hunch but less than what is required for probable cause."
**129 State v. Willard , 374 S.C. 129, 134, 647 S.E.2d 252, 255 (Ct. App. 2007). "An additional factor to consider when determining whether reasonable suspicion exists is the officer's experience and intuition." State v. Taylor , 388 S.C. 101, 116, 694 S.E.2d 60, 68 (Ct. App. 2010), rev'd on other grounds , 401 S.C. 104, 736 S.E.2d 663 (2013). "Nevertheless, 'a wealth of experience will [not] overcome a complete absence of articulable facts.' " Id. (quoting United States v. McCoy , 513 F.3d 405, 415 (4th Cir. 2008) ). "Furthermore, an officer's impression that an individual is engaged in criminal activity, without confirmation, does not amount to reasonable suspicion." Id.
The trial court did not err in denying Kotowski's motion to suppress the evidence seized by law enforcement officers after conducting the knock and talk. Law enforcement relied on three pieces of information in arguing they had reasonable suspicion: (1) the anonymous tip Sergeant Thompson received on June 13, 2014; (2) the spotty surveillance Sergeant Thompson conducted of the house, which is where he recognized the vehicle belonging to the son of a convicted methamphetamine cook; and (3) the NPLEx records, showing what Sergeant Thompson referred to as "a substantial amount of purchases."
Here, we find the NPLEx records reflecting three attempted pseudoephedrine purchases in a single day, in conjunction with Sergeant Thompson's testimony he had received extensive training in methamphetamine labs and has been "clandestine meth lab certified" since 2004, adequate to raise reasonable suspicion. Sergeant Thompson has investigated over one hundred methamphetamine labs during his career. He testified he noticed Vining tended to go to different pharmacies to make pseudoephedrine purchases, which he provided is consistent with illicit drug manufacturers attempting to conceal their movement from law enforcement. Due to Sergeant Thompson's experience in cases involving methamphetamine manufacturing, along with the articulable facts listed above, the trial court did not err in finding law enforcement officers had reasonable suspicion to conduct a knock and talk. Accordingly, the trial court did not err in admitting the evidence discovered pursuant to the knock and talk.
II. Protective Sweep
Kotowski contends the trial court erred in admitting evidence of an active methamphetamine lab because law enforcement **130 officers violated his Fourth Amendment rights when they conducted a protective sweep of a residence where he was an overnight guest without exigent circumstances and without a warrant. We disagree.
"The exigent circumstances doctrine provides an exception to the Fourth Amendment[']s protection against warrantless searches, but only where, from an objective standard, a compelling need for official action and no time to secure a warrant exists." Counts , 413 S.C. at 163, 776 S.E.2d at 65 (quoting State v. Abdullah , 357 S.C. 344, 351, 592 S.E.2d 344, 348 (Ct. App. 2004) ). "For instance, a warrantless search is justified under the exigent circumstances doctrine to prevent a suspect from fleeing or where there is a risk of danger to police or others inside or outside a dwelling." Id. (quoting Abdullah , 357 S.C. at 351, 592 S.E.2d at 348 ). "In such circumstances, a protective sweep of the premises may be permitted." Id. (quoting Abdullah , 357 S.C. at 351, 592 S.E.2d at 348 ). "The linchpin of the protective sweep analysis is not 'the threat posed by the arrestee, [but] the safety threat posed by the house, or more properly by unseen third parties in the house.' "
*611 United States v. Jones , 667 F.3d 477, 484 (4th Cir. 2012) (quoting Maryland v. Buie , 494 U.S. 325, 336, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) ). " '[T]he Fourth Amendment's concern with "reasonableness" allows certain actions to be taken in certain circumstances, whatever the subjective intent.' " State v. Wright , 391 S.C. 436, 444, 706 S.E.2d 324, 328 (2011) (quoting Whren v. United States , 517 U.S. 806, 814, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ).
The trial court did not err in finding exigent circumstances justified a protective sweep. In its order, the trial court found:
[T]here were exigent circumstances that warranted it. The overwhelming smell of ammonia certainly is a potentially dangerous type of situation that would risk not only officer safety but safety of the neighbors if there was to be an explosion and further there was activity which was described at different windows and the officers did not know for officer safety if there were other individuals located in the residence.
The record contains evidence supporting the trial court's finding, specifically the testimony of Sergeant Thompson, who **131 provided "[d]epending on what method you're cooking [with] ... you're dealing with lithium metal and lithium metal reacts to the water." With one particular manufacturing method, "you're actually manufacturing water ammonia so you have an explosive hazard. Let alone it's in a bottle under pressure with a lot of fuel, white gas, so you have an explosive hazard."
Considering the totality of the circumstances, we find exigent circumstances developed as soon as Kotowski opened the front door and Sergeant Thompson was "immediately overwhelmed with the odor of ammonia." Given Sergeant Thompson's extensive training concerning methamphetamine labs, officers had objectively reasonable grounds to conduct a limited search of the premises not only for the protection of the responding officers, but for the safety of any neighbors in close proximity to a possibly active methamphetamine lab. Accordingly, the trial court did not err in finding exigent circumstances justified a protective sweep of the residence.
III. NPLEx Records
Kotowski asserts the trial court erred in admitting testimony concerning the NPLEx records because they constituted hearsay and the State failed to establish a sufficient foundation to satisfy the business records exception. He also maintains the records violated his Sixth Amendment right to confrontation because the State failed to present testimony from a records custodian. Finally, he contends the admission of the NPLEx records violated Rule 403, SCRE, because they are unfairly prejudicial and invited the jury to convict him on an improper basis. We disagree and address these arguments in turn.
A. Hearsay
" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Rule 801(a), SCRE. Further, "[a] 'declarant' is a person who makes a statement."
**132 Rule 801(b), SCRE. However, Rule 803(6), SCRE, provides an exception to the rule against hearsay for business records.
This court recently decided a case looking at these same NPLEx records. We found "NPLEx logs are not created for litigation purposes and are admissible under the business records exception to the rule against hearsay." State v. Mealor , 425 S.C. 625, 641, 825 S.E.2d 53, 62 (Ct. App. 2019). "The NPLEx records were created to comply with state statutes, not to investigate a specific case or individual." Id. "[T]he main purpose of the NPLEx records is to enable the [National Association of Drug Diversion Investigators (NADDI) ] to track and regulate the sale of non-prescription ... pseudoephedrine. Accordingly, the main purpose of the NPLEx records is not to establish or prove some fact at trial." Id. (quoting Montgomery v. State , 22 N.E.3d 768, 775 (Ind. Ct. App. 2014) ). These logs are prepared in the ordinary course of business in accordance with state law, not in anticipation of litigation or *612 to address a specific individual. Accordingly, we find the trial court correctly found the NPLEx records fall under the business record exception to hearsay.
B. Foundation
"This court has held that before the trial court may admit a business record into evidence, a qualified witness must 'lay the foundation to meet the requirements of Rule 803(6) and section 19-5-510.' " Id. at 67 (quoting Deep Keel, LLC v. Atl. Private Equity Grp., LLC , 413 S.C. 58, 73, 773 S.E.2d 607, 615 (Ct. App. 2015) ). "Black's Law Dictionary defines 'laying a foundation' as '[i]ntroducing evidence of certain facts needed to render later evidence relevant, material, or competent.' " Id. (quoting Laying a Foundation , Black's Law Dictionary (10th ed. 2014)).
The North Carolina Court of Appeals dealt with a foundation argument regarding NPLEx logs in State v. Hicks , 243 N.C.App. 628, 777 S.E.2d 341 (2015), similar to the one made here. The court found nothing required NPLEx records be authenticated by the person who made them, and instead, a law enforcement officer could authenticate the records. Id. at 349. The court explained:
**133 [The] officer thoroughly demonstrated his understanding of the NPLEx database, the method by which the data was gathered, transmitted, and stored, and the underlying basis for the report admitted into evidence. [The officer's] testimony provided a sufficient foundation for the admission of the computer report from the NPLEx database as a business record.
Id.
In the present case, Kotowski contends the State was required to present testimony from someone associated with Appriss-the company responsible for maintaining the database-regarding the methods used to collect, maintain, and review the data in the NPLEx database to ensure its accuracy. However, because Sergeant Thompson was able to testify about his knowledge of and familiarity with the NPLEx database, he falls under the "other qualified witness" portion of Rule 803(6), SCRE.
Sergeant Thompson testified he and other law enforcement officers regularly consult the NPLEx database for pseudoephedrine purchases when investigating individuals suspected of manufacturing methamphetamine. Sergeant Thompson further stated because of his familiarity with the system, Appriss has asked him to teach seminars on how to use it. Sergeant Thompson thoroughly demonstrated his understanding of the NPLEx database, the method by which the data was gathered, transmitted, and stored, and the underlying basis for the report, and therefore provided a sufficient foundation for the admission of the computer report from the NPLEx database as a business record. Thus, we find the trial court did not abuse its discretion in finding Sergeant Thompson a qualified witness.
C. Confrontation Clause
Evidence admissible under a hearsay exception must not violate the accused's rights under the Confrontation Clause. "The Sixth Amendment's Confrontation Clause guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.' "
**134 State v. Ladner , 373 S.C. 103, 111, 644 S.E.2d 684, 688 (2007) (quoting U.S. Const. amend. VI ). "In Crawford v. Washington[1 ], the United States Supreme Court ... held that the admission of testimonial hearsay statements against an accused violates the Confrontation Clause if: (1) the declarant is unavailable to testify at trial, and (2) the accused has had no prior opportunity to cross-examine the declarant." Id.
While South Carolina has not addressed whether logs such as these violate the confrontation clause, many other jurisdictions have. The Seventh Circuit Court of Appeals has looked at some of those cases. That court noted:
[I]n Towns , the Fifth Circuit concluded that NPLEX records did not present a Confrontation Clause issue because *613 [t]he pharmacies created these purchase logs ex ante to comply with state regulatory measures, not in response to an active prosecution. Additionally, requiring a driver's license for purchases of pseudoephedrine deters crime. The state thus has a clear interest in businesses creating these logs that extends beyond their evidentiary value.
United States v. Towns , 718 F.3d 404, 411 (5th Cir. 2013) ; see also United States v. Collins , 799 F.3d 554, 585-86 (6th Cir. 2015) (observing that "the MethCheck reports at issue in this case were not made to prove the guilt or innocence of any particular individual, nor were they created for solely evidentiary purposes" and therefore holding that the district court had "not commit[ted] plain error in violation of the Confrontation Clause by allowing their admission at trial").
United States v. Lynn , 851 F.3d 786, 792-93 (7th Cir. 2017) (all alterations except for first by court).
The Seventh Circuit further explained:
NPLEX logs are regularly maintained and updated each time an individual purchases an over-the-counter cold medicine that includes pseudoephedrine. And, as the Fifth Circuit noted, state regulatory bodies may have legitimate interests in maintaining these records that far exceed their evidentiary value in a given case. For example, requiring **135 identification for each pseudoephedrine purchase may deter misuse or pseudoephedrine-related drug offenses. The NPLE[x] logs therefore are nontestimonial, and the Confrontation Clause poses no barrier to their introduction.
Id. at 793 (footnote omitted).
The Sixth Circuit Court of Appeals has also considered the admission of similar logs. Collins , 799 F.3d at 586. In Collins , that court determined:
[T]he MethCheck reports at issue in this case were not made to prove the guilt or innocence of any particular individual, nor were they created for solely evidentiary purposes. Although law enforcement officers may use MethCheck records to track pseudoephedrine purchases, the MethCheck system is designed to prevent customers from purchasing illegal quantities of pseudoephedrine by indicating to the pharmacy employee whether the customer has exceeded federal or state purchasing restrictions. See Towns , 718 F.3d at 411 ("Because the [pseudoephedrine] purchase logs were not prepared specifically and solely for use at trial, they are not testimonial and do not violate the Confrontation Clause."). Furthermore, it is improbable that a pharmacy employee running a standard identification check of a customer would have anticipated that the records of that transaction would later be used against these particular defendants at trial. Because the MethCheck records at issue in this case are not clearly testimonial in nature, the district court did not commit plain error in violation of the Confrontation Clause by allowing their admission at trial.
Id. (second alteration by court).
Kotowski argues the admission of the NPLEx records violated his right to confrontation. However, as stated above, NPLEx records were created to comply with state regulatory measures, not to investigate a specific case or individual. Sergeant Thompson testified as to the state's reasons for requiring creation of the records. He testified:
[T]o reduce methamphetamine labs[,] [C]ongress enacted laws to where certain things were restricted, pseudoephedrine **136 being that. It was required that you record any purchase of pseudoephedrine on a log, and at the time it was a paper log. So if you were to go and buy pseudoephedrine from any pharmacy or any gas station ... you're required to sign a log with your name, your date of birth, what was purchased, the brand name, and the amount of the purchase, however [many] grams of pseudoephedrine or Sudafed.
Because the NPLEx records are kept to comply with state regulatory measures, we find they are nontestimonial. Thus, we agree with the conclusion in Towns that the Confrontation Clause poses no barrier to their introduction.
*614 D. Unfair Prejudice
Pursuant to Rule 402, SCRE, all relevant evidence is generally admissible. A trial court has a great amount of discretion in deciding whether or not evidence is admitted, and such a determination will not be overturned unless it abuses that discretion. State v. Adams , 354 S.C. 361, 377, 580 S.E.2d 785, 793 (Ct. App. 2003). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." State v. Wise , 359 S.C. 14, 21, 596 S.E.2d 475, 478 (2004).
"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. "A trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances. We review a trial judge's decision regarding Rule 403 pursuant to the abuse of discretion standard and are obligated to give great deference to the trial court's judgment." State v. McLeod , 362 S.C. 73, 81-82, 606 S.E.2d 215, 220 (Ct. App. 2004) (citations omitted).
"Unfair prejudice means an undue tendency to suggest decision on an improper basis."
**137 State v. Wiles , 383 S.C. 151, 158, 679 S.E.2d 172, 176 (2009). "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." State v. Dennis , 402 S.C. 627, 636, 742 S.E.2d 21, 26 (Ct. App. 2013) (quoting State v. Gilchrist , 329 S.C. 621, 630, 496 S.E.2d 424, 429 (Ct. App. 1998) ). "Evidence is unfairly prejudicial if it has an undue tendency to suggest a decision on an improper basis, such as an emotional one." State v. Cheeseboro , 346 S.C. 526, 547, 552 S.E.2d 300, 311 (2001). "All evidence is meant to be prejudicial; it is only unfair prejudice which must be avoided." Gilchrist , 329 S.C. at 630, 496 S.E.2d at 429 (brackets omitted) (quoting United States v. Rodriguez-Estrada , 877 F.2d 153, 156 (1st Cir. 1989) ).
In this case, the NPLEx records were highly probative to show an objective basis for the reasonable suspicion standard to conduct the initial knock and talk. Sergeant Thompson testified the multiple purchase attempts by Michelle Vining in a short time frame alerted him that some illegal activity might be occurring. Therefore, we find the danger of unfair prejudice does not substantially outweigh the probative value of the records. Thus, the trial court did not abuse its discretion by allowing them into evidence.
CONCLUSION
Based on the foregoing, the trial court did not err in denying Kotowski's motion to suppress any evidence obtained as a result of the knock and talk. Further, the trial court did not err in finding exigent circumstances justified a protective sweep. Finally, the trial court did not err in admitting the NPLEx records into evidence. Thus, the trial court is
AFFIRMED.
MCDONALD and HILL, JJ., concur.

541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).