# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Darell Oneil Boston, Appellant.

Appellate Case No. 2018-000504

———

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court Judge

———

Opinion No. 5808
Heard November 10, 2020 – Filed March 10, 2021

———

**AFFIRMED**

———

David Nelson Lyon, of Duff Freeman Lyon, LLC, and
Chief Appellate Defender Robert Michael Dudek, both of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Mark Reynolds Farthing, both of
Columbia; and Solicitor Scarlett Anne Wilson, of
Charleston, for Respondent.

———

**KONDUROS, J.:** Darell Oneil Boston was convicted of manufacturing crack
cocaine and sentenced to seventeen years' imprisonment. He appeals the circuit
court's denial of his motion to suppress evidence found during a "knock and talk."
We affirm.

**FACTS/PROCEDURAL HISTORY**

On March 6, 2015, Sergeant Joseph Sherwood of the North Charleston Police Department, after responding to a dispatch call, proceeded to patrol a nearby apartment community.[1]  The police department had directed Sergeant Sherwood to increase patrols of the apartment community as it had been the site of narcotics activity and because vulnerable adults resided in the apartment community.  A week earlier, the landlord contacted the department to report a nonresident had threatened him.

At approximately 5:30 p.m. on that evening, Sergeant Sherwood, along with two other officers—Sergeant Hoose and Officer Etninan—observed two men, later identified as Boston and William Holmes, get out of a taxi and enter the apartment of a resident, Denise Holman.  Sergeant Sherwood knew Holman had some undetermined mental challenges and used narcotics.  Sergeant Sherwood stated the area had "always been a hot spot for narcotics activity" and "single occupants that live in there  . . . [are] not mentally handicapped . . . but they need to be assisted and [can be] easily taken advantage of."  Sergeant Sherwood also had some knowledge of Boston and Holmes, recognizing them from another residence where drug activity took place.  Sergeant Sherwood had previously had "several run-ins with them."

The entry of the two men into Holman's apartment raised concerns for Sergeant Sherwood about her safety and the nature of the activity that might be going on inside the apartment.  Sergeant Sherwood and the other officers "decided we were going to go knock on the door to check on [Holman] and see if everything is okay."  He elaborated:

> When [w]e have the complaints that we were having and
> the elements that we had at this residence[,] we will
> knock on the door to make sure that one, she is okay[,]
> and two, see if there is any possib[ilit]y [of] any crime or
> if she had any information for us.  And maybe they were
> just friends and I would have been fine with that and
> said[,] okay Ms. Denise[,] see you later[,] and just been
> on my way[,] but there was a little more to [it] than that.

---

[1] Sergeant Sherwood was a patrol officer at the time of the incident in 2015 but a sergeant at the time of the pretrial hearing in 2017.

After Boston and Holmes had been inside Holman's apartment for approximately fifteen minutes, Sergeant Sherwood knocked on Holman's door. Holman responded to the knock by answering the door and fully opening the door. Holman allowed him to enter and she stepped aside. When Sergeant Sherwood entered the small apartment, he saw two men in the kitchen area of the apartment "huddled around" a running microwave oven and saw two plastic bags that had a white residue on them. When the men noticed him, the men opened the microwave, hid their hands, and ran into the bathroom. Sergeant Sherwood also saw a scale on the kitchen counter.

Concerned the men may have been armed, Sergeant Sherwood performed a protective sweep and ordered Boston and Holmes out of the bathroom. Holmes agreed to Sergeant Hoose's request to conduct a search of his person, which revealed a scale and a baggie of white powder. Sergeant Sherwood found a Pyrex brand measuring cup in the bathroom, with a steaming substance in the cup that appeared to be crack cocaine. Sergeant Sherwood then left the scene to obtain a search warrant, returned and searched the residence, taking multiple items into evidence, and arrested Boston and Holmes.

Sergeant Sherwood did not arrest Holman because she was not a participant to the manufacturing he observed. It was his understanding that often those who manufacture narcotics pay another person for the use of his or her home to manufacture crack in exchange for money or crack. Holman allowed the men to use her apartment because she hoped they would give her some of the manufactured crack.

At the pretrial hearing on November 30, 2017, Boston moved to suppress the evidence the officers seized, including baggies containing white powder, scales, and Pyrex measuring cups, on the grounds that the search violated his right to be free from an unreasonable search and seizure under both the United States and the South Carolina Constitutions and was an unreasonable invasion of his privacy under the South Carolina Constitution. The circuit court denied Boston's motion to suppress the evidence, finding Sergeant Sherwood had reasonable suspicion to engage in the knock and talk.

The matter proceeded to trial,[2] and on February 7, 2018, a jury found Boston guilty of manufacturing crack cocaine. The circuit court sentenced him to seventeen years of imprisonment. Boston moved for a new trial, which the court denied. This appeal follows.

## STANDARD OF REVIEW

> "On appeal from a motion to suppress on Fourth Amendment grounds, this [c]ourt applies a deferential standard of review and will reverse only if there is clear error." *Robinson v. State,* 407 S.C. 169, 180-81, 754 S.E.2d 862, 868 (2014), *cert. denied,* —— U.S. ——, 134 S. Ct. 2888, 189 L.Ed.2d 845 (2014); *see State v. Tindall,* 388 S.C. 518, 520, 698 S.E.2d 203, 205 (2010) (recognizing that in criminal cases an appellate court sits to review errors of law only and [is], therefore, bound by the trial court's findings unless clearly erroneous).

*State v. Counts*, 413 S.C. 153, 160, 776 S.E.2d 59, 63 (2015).

## LAW/ANALYSIS

Boston contends the circuit court erred by denying his motion to suppress the evidence in violation of his right to privacy under Article 1, section 10, of the South Carolina Constitution and *State v. Counts*, 413 S.C. 153, 776 S.E.2d 59 (2015), because law enforcement did not have reasonable suspicion to engage in the knock and talk.[3] We disagree.

_____

[2] Boston objected to the introduction of the evidence obtained by officers pursuant to the knock and talk at trial.

[3] The State argues even if this court holds the knock and talk was unreasonable under *Counts*, the circuit court did not err because the officers acted consistently with the law in effect at the time of the incident. We recognize the incident that is the subject of this appeal occurred in 2015, four months prior to the supreme court's decision in *Counts*. However, *Counts* was the prevailing precedent at the time of Boston's pretrial suppression hearing in 2017. At the pretrial hearing, the State did not raise the argument to the circuit court that the officers were acting in accordance with the law prior to the *Counts* decision. Rather, at the pretrial hearing, the State asserted the applicability of the *Counts* decision to the circuit court. While we may rely on additional grounds a respondent raises on appeal, we

Article 1, section 10, of the South Carolina Constitution establishes:

> The right of the people to be secure in their persons,
> houses, papers, and effects against unreasonable searches
> and seizures and unreasonable invasions of privacy shall
> not be violated, and no warrants shall issue but upon
> probable cause, supported by oath or affirmation, and
> particularly describing the place to be searched, the
> person or thing to be seized, and the information to be
> obtained.

Our supreme court has also established that South Carolina may provide more protection than that afforded by the United States Constitution: "[S]tate courts can develop state law to provide their citizens with a second layer of constitutional rights," and "this [c]ourt can interpret the state protection against unreasonable searches and seizures in such a way as to provide greater protection than the federal Constitution." *State v. Forrester*, 343 S.C. 637, 643-44, 541 S.E.2d 837, 840 (2001).

In 2015, our supreme court extended constitutional protection in *State v. Counts*: law enforcement must have reasonable suspicion of illegal activity to perform a knock and talk. 413 S.C. at 174, 776 S.E.2d at 71. Without such a requirement, the supreme court found a knock and talk would violate a person's right to privacy set forth in the South Carolina Constitution. *Id.* at 174, 776 S.E.2d at 70-71. In establishing this threshold requirement, our supreme court reaffirmed that the South Carolina Constitution's privacy protection against unreasonable searches and seizures "favors an interpretation offering a higher level of privacy protection than the Fourth Amendment." *Id.* at 168, 776 S.E.2d at 68 (quoting *Forrester*, 343 S.C. at 645, 541 S.E.2d at 841).

In *Counts*, law enforcement officers responded to two anonymous tips that Counts was selling narcotics and using fake identification cards. *Id.* at 173, 776 S.E.2d at

---

decline to do so here. *See I'On, LLC v. Town of Mt. Pleasant*, 338 S.C. 406, 421, 526 S.E.2d 716, 724 (2000) ("[T]he respondent may raise an additional sustaining ground that was not even presented to the lower court, but the appellate court is likely to ignore it").

The officers independently confirmed Counts had a criminal record and had used more than one identity.  *Id.*  Based upon the anonymous tips and the information confirmed by the officers, our supreme court found the officers had reasonable suspicion of illegal activity to engage in a knock and talk.  *Id.*

> Notably, law enforcement received two separate anonymous tips from citizens who alleged that Counts was selling drugs.  These tips also identified vehicles driven by Counts, his phone number, and his use of multiple identities.  Through their investigation, the officers confirmed that Counts had two false identification cards on record and had prior drug convictions.  In light of this evidence, the officers were not randomly knocking on Counts' door but had reasonable suspicion to support their decision to approach Counts' residence and conduct the "knock and talk."

*Id.*

This court recently addressed the legality of a knock and talk in *State v. Kotowski*, 427 S.C. 119, 828 S.E.2d 605 (Ct. App. 2019), *aff'd in part, vacated in part on other grounds*, 430 S.C. 318, 844 S.E.2d 650 (2020) (per curiam).  In *Kotowski*, the sheriff's office of Dorchester County received an anonymous tip alerting the department to drug use at a particular residence.  *Id.* at 125, 828 S.E.2d at 608.  An officer drove by the residence a number of times, noting a vehicle parked at the residence was owned by the son of a person previously convicted for crimes involving methamphetamine.  *Id.*  Officers went to the home to engage in a "knock and talk."  *Id.* at 125-26, 828 S.E.2d at 628.  Kotowski responded to the knock and stepped outside to speak to the officer, closing the door behind him.  *Id.* at 126, 828 S.E.2d at 628.  The officer testified Kotowski smelled strongly of ammonia.  *Id.*  Kotowski indicated his girlfriend was also in the home.  *Id.*  Kotowski went inside to get her and attempted to close the door, but the officer placed his foot in the way.  *Id.*  When the girlfriend appeared, the officer asked if she would consent to a search of her home, but she declined.  *Id.*  "Believing something to be amiss," the officer ordered his fellow officers to perform a protective sweep of the house, which revealed evidence of drugs and resulted in the issuance of a warrant and Kotowski's arrest.  *Id*. at 126-27, 828 S.E.2d at 609.

This court found the officers did have reasonable suspicion to utilize the knock and talk investigative technique:

> The trial court did not err in denying Kotowski's motion to suppress the evidence seized by law enforcement officers after conducting the knock and talk. Law enforcement relied on three pieces of information in arguing they had reasonable suspicion: (1) the anonymous tip Sergeant Thompson received on June 13, 2014; (2) the spotty surveillance Sergeant Thompson conducted of the house, which is where he recognized the vehicle belonging to the son of a convicted methamphetamine cook; and (3) the [National Precursor Log Exchange] records, showing what Sergeant Thompson referred to as "a substantial amount of purchases."

*Id.* at 129, 828 S.E.2d at 610.

Furthermore, *Kotowski* lays out the basis for what constitutes reasonable suspicion:

> Reasonable suspicion consists of "'a particularized and objective basis' that would lead one to suspect another of criminal activity." *State v. Lesley*, 326 S.C. 641, 644, 486 S.E.2d 276, 277 (Ct. App. 1997) (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L.Ed.2d 621 (1981)). "Reasonable suspicion is more than a general hunch but less than what is required for probable cause." *State v. Willard*, 374 S.C. 129, 134, 647 S.E.2d 252, 255 (Ct. App. 2007). "An additional factor to consider when determining whether reasonable suspicion exists is the officer's experience and intuition." *State v. Taylor*, 388 S.C. 101, 116, 694 S.E.2d 60, 68 (Ct. App. 2010), *rev'd on other grounds*, 401 S.C. 104, 736 S.E.2d 663 (2013). "Nevertheless, 'a wealth of experience will [not] overcome a complete absence of articulable facts.'" *Id.* (quoting *United States v. McCoy*, 513 F.3d 405, 415 (4th Cir. 2008)). "Furthermore, an officer's impression that an individual is engaged in

> criminal activity, without confirmation, does not amount
> to reasonable suspicion."

*Id.* at 128-29, 828 S.E.2d at 610.

In the present case, the circuit court did not err in denying Boston's motion to suppress. Sergeant Sherwood testified to objective knowledge of the apartment community and the three people inside the apartment. Sergeant Sherwood had years of experience investigating criminal drug activity, with extensive training and certification, including eleven years with the department, and was very familiar with the apartment community he surveilled. He knew Boston and Holmes did not live there and recognized them from a previous incident at another location. Sergeant Sherwood's department had specifically directed him to patrol the area of the apartments based upon information the area had been "a hot spot of narcotics activity." He also testified he had knowledge of the practice of those engaged in illegal activity using the apartments of others to manufacture drugs. During his patrol, he observed Boston and Holmes enter the home of a person he knew lived alone, had some undefined limitations, and had used narcotics in the past.

The circuit court relied on specific evidence to find the knock and talk was based on reasonable suspicion of illegal activity. Nothing in the Record indicates law enforcement engaged in the knock and talk "randomly." *See Counts*, 413 S.C. at 173, 776 S.E.2d at 70 ("T]he officers were not randomly knocking on Counts' door but had reasonable suspicion to support their decision to approach Counts' residence and conduct the 'knock and talk.'"). *Id*. at 173, 776 S.E.2d at 70. Likewise, Sergeant Sherwood and his fellow officers did not randomly knock on Holman's door. While patrolling an area known as an area of criminal drug activity, Sergeant Sherwood observed the specific occurrence of Boston and Holmes going into the home of Holman, forming a basis for reasonable suspicion.[4]

---

[4] While neither the circuit court nor the parties asserted Sergeant Sherwood knocked on Holman's door to perform a "welfare check" expressly, Sergeant Sherwood testified he was concerned about Holman. While Sergeant Sherwood testified the impetus for the knock and talk was investigative, we are also aware Sergeant Sherwood had concern for Holman as a person who may have been vulnerable to being taken advantage of by others. *See Counts*, 413 S.C. at 176 n.7, 776 S.E.2d at 72 n. 7 ("A 'welfare check' is not a criminal investigative technique. As its name implies, a 'welfare check' is conducted by law enforcement based upon

Therefore, the circuit court did not err in denying Boston's motion to suppress the evidence.

**CONCLUSION**

The circuit court did not err in denying Boston's motion to suppress because law enforcement had reasonable suspicion of illegal activity to approach Holman's door and conduct the "knock and talk."  Accordingly, the decision of the circuit court is

**AFFIRMED.**

**LOCKEMY, C.J., and MCDONALD, J., concur.**

---

concern for a person's welfare not to inquire about illegal activity at the residence").  *Id.* at 176 n.7, 776 S.E.2d at 72 n.7.