# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Appellant,

v.

Sylvester Ferguson, III, Respondent.

Appellate Case No. 2018-002133

---

Appeal From Laurens County
Frank R. Addy, Jr., Circuit Court Judge

---

Opinion No. 5915
Heard February 10, 2022 – Filed June 1, 2022

---

## AFFIRMED

---

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General Mark Reynolds Farthing,
both of Columbia; and Solicitor David Matthew Stumbo,
of Greenwood, all for Appellant.

Appellate Defender David Alexander, of Columbia, for
Respondent.

---

**WILLIAMS, C.J.:** In this criminal appeal, pursuant to Article I, Section 10 of the
South Carolina Constitution, the trial court suppressed evidence of
methamphetamine production that officers found inside an apartment occupied by
Sylvester Ferguson. The State argues the trial court erred in (1) finding officers
needed a reasonable suspicion of criminal activity before approaching the

apartment to conduct a "knock and talk" and (2) ruling the officers did not have a reasonable suspicion to approach the apartment.  We affirm.

## FACTS/PROCEDURAL HISTORY

On January 17, 2017, Laurens County Sheriff's Deputy Andrew Hall was conducting routine patrol in Joanna, South Carolina.  While parked at a gas station, an unknown male approached Deputy Hall and told him that Ferguson was in the upper-left unit of an apartment building on Whitmire Highway "cooking dope." Deputy Hall was unfamiliar with the tipster, and he failed to collect his name or any means to contact him.  He also failed to ask any questions to verify the tipster's statement.  Although he had never personally arrested Ferguson, Deputy Hall was familiar with Ferguson from prior encounters at the Laurens County Detention Center.  Deputy Hall immediately called Investigator Charles Nations,[1] a member of the Laurens County Sheriff's Office narcotics unit, to relay the tip and to ask if Investigator Nations wanted to accompany him in conducting a knock and talk at the apartment.  Deputy Hall explained that the town of Joanna is a high traffic drug area and that he wanted a narcotics investigator to assist in the investigation. Roughly twenty minutes after receiving the tip, Deputy Hall and Investigator Nations arrived at the apartment to conduct a knock and talk.

Investigator Nations testified that he and Deputy Hall had to "guesstimate" which apartment building the tipster referred to in his statement, but narrowed their search quickly as there was only one apartment building on Whitmire highway.  As officers approached the upper-left unit, they noticed the front window was open and they heard the sound of the front door deadbolt cycling.  Before the officers could knock, Henry Davis, Ferguson's cousin, opened the door to leave for work.[2] Investigator Nations stated that despite the window being open and Davis opening

---

[1] Investigator Nations also had prior encounters with Ferguson.  He had observed officers arrest Ferguson one night during a "ride-along" after receiving information that Ferguson was manufacturing methamphetamine in Joanna.  However, he admitted that he was unaware of Ferguson's entire criminal history or prior convictions before the date of the arrest in this case.

[2] Davis leased the apartment.  It is unclear if Ferguson lived there, but Investigator Nations testified that he believed Davis rented Ferguson a room in the apartment for money.  Officers also found vocational rehabilitation papers and a job application with Ferguson's name on it, and Ferguson's clothing.  Investigator Nations claimed Davis told him Ferguson lived there while the two men were arrested.

the door, he did not smell ammonia or other pungent fumes associated with methamphetamine production.  Davis spoke with the officers outside of the residence and confirmed that Ferguson was inside.  As Davis went to retrieve Ferguson, Investigator Nations took a step into the apartment to maintain contact with Davis and Ferguson appeared out of a rear bedroom.  The officers explained to Davis and Ferguson that they received a tip about drug manufacturing, but both men denied any knowledge of illegal activity in the apartment.  Investigator Nations then asked if he could walk through the house.  Ferguson hesitated and then acquiesced once Davis consented.

During the walkthrough, Investigator Nations found a bottle of lighter fluid and a clear wrapper that contained a yellow, paste-like substance in the bathroom.  Another officer found a marijuana pipe with residue in it on a coffee table in the living room.  Based on these discoveries, Investigator Nations applied for a search warrant, and it was issued roughly thirty minutes later.  While waiting for the search warrant, officers noticed Ferguson fidgeting in his pockets and requested he stop.  Ferguson continued and officers conducted a *Terry*[3] frisk.  Officers found a vial containing powder on Ferguson's person that they presumed was crack cocaine or methamphetamine.  Upon executing the search warrant, officers found three different bottles used to create hydrogen chloride, a bottle of sulfuric acid, and other paraphernalia used to produce methamphetamine, most of which was found in a trash pile on the back porch.  Officers arrested both Davis and Ferguson based on their findings.

At a pretrial suppression hearing, Ferguson argued all evidence produced from the initial walkthrough and pursuant to the search warrant was inadmissible at trial because the officers violated his right to privacy under the South Carolina Constitution.  Specifically, Ferguson argued that under *State v. Counts*,[4] Deputy Hall and Investigator Nations needed a reasonable suspicion that he was manufacturing methamphetamine to approach the apartment and conduct a knock and talk.  Further, he argued the tip was equivalent to an anonymous tip due to the lack of information it provided about the tipster.

In opposition, the State argued Ferguson did not have standing to assert a privacy interest in the apartment and that no knock and talk occurred because Davis opened the door before the officers could make it to the door.  Further, the State contended the "fresh" tip from a face-to-face encounter was sufficient to establish reasonable

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).
[4] 413 S.C. 153, 776 S.E.2d 59 (2015).

suspicion when coupled with the officers' prior knowledge of Ferguson's connection to drug production and the apartment being in a high traffic drug area.[5]

The trial court ruled that *Counts* required the court to suppress the evidence. It determined the engagement by officers of the occupants of a residence triggers the need for reasonable suspicion, which the officers did not have in this case. In so holding, the trial court reasoned (1) the tipster was unknown and provided officers with no indicia of reliability or credibility, and Deputy Hall did not know at what point the tipster observed, if at all, Ferguson manufacturing methamphetamine; (2) the evidence collected at the apartment did not establish an active methamphetamine lab, which was the substance of the tip; and (3) the officers failed to take any measure to independently corroborate the tip. At the conclusion of the hearing, the State dismissed the case. This appeal followed.

## ISSUE ON APPEAL

Did the trial court err in suppressing all evidence seized from the apartment under Article 1, Section 10 of the South Carolina Constitution?

## STANDARD OF REVIEW

The admission of evidence is within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011). The trial court abuses its discretion when the ruling is based on an error of law or when the ruling is grounded in factual conclusions that lack evidentiary support. *Id.* "[A]ppellate court[s] will reverse only when there is clear error." *Id.* (quoting *State v. Missouri*, 361 S.C. 107, 111, 603 S.E.2d 594, 596 (2004) (citation omitted)).

## LAW/ANALYSIS

The State asserts the trial court erred in suppressing the evidence under Article 1, Section 10's prohibition against unreasonable invasions of privacy. We disagree.

---

[5] Moreover, the State argued the officers' actions were supported by exigent circumstance. The trial court ruled no exigent circumstances existed because the officers could not smell the production of methamphetamine while approaching the door and none of their actions indicated they thought an emergency existed, including the officers' request for consent to enter the home.

The South Carolina Constitution grants citizens an express right to privacy.  S.C. Const. art. I, § 10.[6]  "But, other than the use of the word 'unreasonable' to modify this right, there are no parameters concerning the right or a definition of what constitutes 'unreasonable invasions of privacy.'"  *Counts*, 413 S.C. at 167, 776 S.E.2d at 67.  "As a result . . . 'the drafters were depending upon the state judiciary to construct a precise meaning of this phrase.'"  *Id.* (quoting Jaclyn L. McAndrew, *Who Has More Privacy?: State v. Brown and Its Effect on South Carolina Criminal Defendants*, 62 S.C. L. Rev. 671, 694 (2011)).

"[T]he privacy interests in one's home are the most sacrosanct, [and] there must be some threshold evidentiary basis for law enforcement to *approach* a private residence."  *Id.* at 172, 776 S.E.2d at 69 (emphasis added).  "[Officers] *must* have reasonable suspicion of illegal activity at a targeted residence *prior to approaching the residence* and knocking on the door."  *Id.* at 172, 776 S.E.2d at 70 (emphasis added).  "In establishing this threshold requirement, our supreme court reaffirmed that the South Carolina Constitution's privacy protection against unreasonable searches and seizures 'favors an interpretation offering a higher level of privacy protection than the Fourth Amendment.'"  *State v. Boston*, 433 S.C. 177, 183, 857 S.E.2d 27, 30 (Ct. App. 2021) (quoting *Counts*, 413 S.C. at 168, 776 S.E.2d at 68), *cert. granted*, S.C. Sup. Ct. Order Dated Jan. 13, 2022.

"Reasonable suspicion consists of 'a particularized and objective basis' that would lead one to suspect another of criminal activity."  *State v. Kotowski*, 427 S.C. 119, 128, 828 S.E.2d 605, 610 (Ct. App. 2019) (quoting *State v. Lesley*, 326 S.C. 641, 644, 486 S.E.2d 276, 277 (Ct. App. 1997)), *aff'd in part, vacated in part on other grounds*, 430 S.C. 318, 844 S.E.2d 650 (2020).  It is more than a hunch but amounts to less than what is required for probable cause.  *Boston*, 433 S.C. at 185, 857 S.E.2d at 31.  In evaluating the existence of reasonable suspicion, courts may consider an officer's experience and intuition.  *Id.*  "Nevertheless, 'a wealth of experience will [not] overcome a complete absence of articulable facts.'"  *Id.* (quoting *Kotowski*, 427 S.C. at 129, 828 S.E.2d at 610).  "Furthermore, an officer's

---

[6] In pertinent part, it provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and *unreasonable invasions of privacy* shall not be violated . . . .

(emphasis added).

impression that an individual is engaged in criminal activity, without confirmation, does not amount to reasonable suspicion." *Id.* (quoting *Kotowski*, 427 S.C. at 129, 828 S.E.2d at 610).

*Counts* and *Boston* are both instructive. In *Counts*, an officer received an anonymous tip alleging the defendant was selling marijuana and crack cocaine out of his mother's house and a separate apartment. 413 S.C. at 157, 776 S.E.2d at 61–62. The tipster provided the defendant's name and aliases; the location of the alleged drug deals; the defendant's girlfriend's name; the make, model, and license plate number of his car; his phone number; and the make and model of the defendant's girlfriend's car. *Id.* at 157, 776 S.E.2d at 62. Based on this information, officers conducted surveillance on the defendant's mother's home and attempted two, unsuccessful, controlled drug buys from the the apartment. *Id.*

Roughly ten months later, another officer received an anonymous tip about the defendant. *Id.* The tipster claimed the defendant was selling drugs out of his apartment and provided the defendant's name, phone number, his girlfriend's name and phone number, and identified his vehicle. *Id.* The tipster also disclosed that the defendant used multiple identities because the defendant knew someone at the Department of Motor Vehicles through whom he procured two false forms of identification. *Id.*

Officers then corroborated the tip by reviewing the defendant's criminal record which showed two prior convictions for distribution of drugs and several other drug charges. *Id.* at 158, 776 S.E.2d at 62. The officers also confirmed that the defendant had two different identification cards on record. *Id.* Based on this information, the officers conducted surveillance on the defendant's apartment, and, upon identifying the defendant driving to and entering the apartment, the officers decided to do a knock and talk. *Id.* When the defendant opened his door after the officers knocked, the officers encountered the smell of marijuana and saw a rolled blunt on a coffee table. *Id.*

On appeal to our supreme court, the defendant argued that under South Carolina's express right to privacy, officers needed reasonable suspicion in light of the totality of the circumstances to initiate the knock and talk. *Id.* at 161, 776 S.E.2d at 64. The supreme court agreed with the defendant, stating, "law enforcement must have reasonable suspicion of illegal activity at a targeted residence prior to approaching the residence and knocking on the door." *Id.* at 172, 776 S.E.2d at 70. The court found, however, that the officers had reasonable suspicion to approach the defendant's residence and knock on the door because (1) the officers received two

separate anonymous tips that alleged the defendant was selling drugs; (2) the tips identified vehicles driven by the defendant, his phone number, and his use of multiple identities; and, (3) through investigation, officers corroborated that the defendant had two false identification cards and prior drug distribution convictions on record. *Id.* at 173, 776 S.E.2d at 70. In conclusion, the supreme court noted,

> For our state constitutional right to privacy to have any significance, we believe there must be some minimum evidentiary standard met before law enforcement conduct a warrantless search of a South Carolina citizen's home. Therefore, we hold that law enforcement must have reasonable suspicion of illegal activity before approaching the targeted residence and conducting the "knock and talk" investigative technique.

*Id.* at 174, 776 S.E.2d at 70–71.

In *Boston*, this court determined that officers held a reasonable suspicion to approach and knock on the door of an apartment where the defendant was visiting. 433 S.C. at 186, 857 S.E.2d at 32. After responding to a call, an officer proceeded to patrol a nearby apartment community known for high volumes of narcotic activity and because "vulnerable" adults lived there. *Id.* at 179, 857 S.E. at 28. While surveilling the apartments, the officer observed two men that he knew were associated with drug activity enter an apartment. *Id.* at 180, 857 S.E.2d at 28. The officer knew the apartment to be the residence of an individual with mental disabilities that used narcotics. *Id.* Based on concerns for the resident's safety and the nature of the activities that might take place inside the apartment, the officer decided to conduct a knock and talk. *Id.* at 180, 857 S.E.2d at 28–29.

In response to a knock, the resident opened her door and allowed the officers to enter the apartment. *Id.* at 180, 857 S.E.2d at 29. Once inside, officers saw two men in the kitchen huddled around a microwave, two plastic bags with white residue on them, and a scale. *Id.* When the men noticed the officers, they opened the microwave, hid their hands, and ran to the bathroom. *Id.* Concerned for their safety, the officers conducted a protective sweep of the apartment and ordered the men out of the bathroom. *Id.* at 180–181, 857 S.E.2d at 29. The officers found a glass measuring cup filled with a steaming substance suspected to be crack cocaine. *Id.*

This court reasoned the officers had a reasonable suspicion to conduct the knock and talk because of the investigating officer's knowledge of (1) the two men in the apartment, (2) criminal drug investigation, and (3) the apartment community he surveilled. *Id.* at 185, 857 S.E.2d at 31. The officer testified to his objective knowledge of the apartment community and the three people inside the apartment, stating he knew all three and that he had previous encounters with the two men that entered the apartment. *Id.* The officer also had eleven years of criminal drug investigation experience and knew the apartment community was a hot spot for drug activity. *Id.*

Initially, we note that *Counts* is explicit in its ruling: our constitution's express right to privacy found in Article 1, Section 10, to have any substance, requires officers to form a reasonable suspicion *before approaching* a residence to conduct a knock and talk or a warrantless search of a home. *Counts*, 413 S.C. at 174, 776 S.E.2d at 70–71. Therefore, we find the state constitution required the officers in this case to develop reasonable suspicion that Ferguson was manufacturing methamphetamine before approaching the apartment to knock on the door.

Further, we find the officers did not form the requisite reasonable suspicion to approach the apartment building in an attempt to conduct a knock and talk. *See Counts*, 413 S.C. at 172, 776 S.E.2d at 70 ("[L]aw enforcement must have reasonable suspicion of illegal activity at a targeted residence *prior to approaching* the residence and knocking on the door." (emphasis added)). Unlike the two anonymous tips in *Counts*, the tip Deputy Hall received lacked any indicia of accuracy or credibility. Deputy Hall did not receive or solicit any information from the tipster that would further indicate Ferguson was manufacturing methamphetamine. For example, he did not ask if Ferguson lived at the apartment or if he drove a specific car that officers could identify and observe at the apartment; he did not ask about potential sales Ferguson might make in the future; he did not ask for Ferguson's phone number or a description of what Ferguson was wearing; he did not ask if he could smell any scents associated with methamphetamine production; and, most importantly, he did not ask how he knew Ferguson or that Ferguson was "cooking dope" at the apartment. *Cf id.* at 173, 776 S.E.2d at 70 (finding officers had reasonable suspicion to approach a residence and conduct a knock and talk when the officers received two separate anonymous tips that the defendant was selling drugs and identified vehicles he drove, his phone number, and his use of multiple identities and identification cards).

Moreover, unlike the officers in *Counts*, Deputy Hall and Investigator Nations failed to conduct any form of independent investigation to buttress the tip—they

did not conduct surveillance, research Ferguson's criminal record, or check the National Precursor Log Exchange.[7] *See Kotowski*, 427 S.C. at 129, 828 S.E.2d at 610 ("[A]n officer's impression that an individual is engaged in criminal activity, *without confirmation*, does not amount to reasonable suspicion." (emphasis added)); *id.* ("[An officer's] wealth of experience will [not] overcome a complete absence of articulable facts." (quoting *State v. Taylor*, 388 S.C. 101, 116, 694 S.E.2d 60, 68 (Ct. App. 2010), *rev's on other grounds*, 401 S.C. 104, 736 S.E.2d 663 (2013)).

Although we disagree with Ferguson that the tip was purely anonymous, the face-to-face encounter alone, or even coupled with the content and nature of the tip itself, is insufficient to create a reasonable suspicion that Ferguson was manufacturing methamphetamine at the apartment. *See United States v. Perkins*, 363 F.3d 317, 323 (4th Cir. 2004) ("The basic rules governing informant's tips are well-established. In cases where an informant's tip supplies part of the basis for reasonable suspicion, [appellate courts] must ensure that the tip possesses sufficient indicia of reliability."). As noted above, Deputy Hall did not ask the informant any follow-up questions to gain additional information regarding Ferguson, the apartment, or how he knew about the alleged methamphetamine production. The informant's tip only provided Ferguson's name, a general location, and the allegation that Ferguson was "cooking dope." While courts generally find face-to-face tips sufficiently reliable due to an officer's ability to judge the tipster's credibility and demeanor, additional facts that allow an officer to evaluate the veracity of the tip are usually present. *See Adams v. Williams*, 407 U.S. 143, 146-47 (1972) (finding an officer had reasonable suspicion to perform a traffic stop based on a face-to-face tip he received from an informant he knew personally, that had provided accurate information in the past, and the information in the tip was immediately verifiable at the crime scene); *United States v. Christmas,* 222 F.3d 141, 143–45 (4th Cir. 2000) (finding an officer had reasonable suspicion to conduct a *Terry* stop based on a face-to-face tip received by an individual who did not provide her name but provided her home address and stated she lived two houses down from the illegal activity; she also provided the tip to the uniformed officer in close proximity to the illegal activity, increasing the probability that someone associated with the illegal activity could see her assist the officer); *State v. Driggers*, 322 S.C. 506, 511–14, 473 S.E.2d 57, 59–61 (Ct. App. 1996) (holding

---

[7] The National Precursor Log Exchange is a real-time electronic logging and compliance system that tracks sales of over-the-counter cold and allergy medications containing pseudoephedrine, a necessary element of methamphetamine.

a face-to-face tip was reliable as the basis for probable cause to support a search warrant where the tipster provided her name to officers, signed a statement, lived in the residence with the defendant, observed the defendant prepare for the crime and talk about the crime afterwards, and provided specific details about evidence from the crime); *cf. Perkins*, 363 F.3d at 320, 323–24 (finding an anonymous tip reliable where the tipster disclosed her general location and her basis of knowledge, stated she was currently watching a crime be committed, the officer assumed the identity of the informant based on her close proximity to the crime and the nature of the description she provided, and the officer's subjective knowledge of the area and the informant's track record). Here, apart from the informant's limited information, Deputy Hall and Investigator Nations had no reason to suspect Ferguson of being inside the apartment, much less manufacturing methamphetamine.

Unlike the officer in *Boston*, Deputy Hall and Investigator Nations did not personally observe any specific circumstances that would lead an officer to believe Ferguson was manufacturing methamphetamine in the apartment. Although the officers were aware that Ferguson was connected to methamphetamine activity, they did not observe Ferguson enter the apartment or know that he was inside. While both Deputy Hall and Investigator Nations testified they were aware that Joanna was a drug hot spot, Joanna is an entire town and both officers testified they had never encountered Ferguson at the specific apartment building or made any drug-related arrests at the apartment building.

Because the informant's tip lacked any indicia of reliability and neither Deputy Hall nor Investigator Nations conducted independent investigations to corroborate the tip, we find the officers lacked the requisite reasonable suspicion to approach the apartment to conduct a knock and talk. *See Counts*, 413 S.C. at 172, 776 S.E.2d at 70 ("[L]aw enforcement *must* have reasonable suspicion of illegal activity at a targeted residence *prior to approaching the residence* and knocking on the door." (emphasis added)). Therefore, the trial court did not err in suppressing the evidence.

**CONCLUSION**

Accordingly, the trial court's ruling is

**AFFIRMED.**

**KONDUROS and VINSON, JJ., concur.**